IN THE MATTER OF THE ESTATE OF JOHN F. MILLER, Deceased; WILLIAM DORRIS, Appellant.

92  741
,s105 567
92  741
128  90

Foreign Will: Executor.  Code, 2347, creating a vacancy if an executor fails to appear and give bond within ten days after appointment, does not apply to an executor named in a foreign will admitted to probate in Iowa; especially where the failure to qualify in said time is well excused.

Removal: Discretion.  It is not discretionary to supplant a foreign executor appointed as such in several wills, and who enjoyed testator's confidence to the last, with an Iowa administrator who is a claimant against the estate.  Such appointment by will should yield to the most persuasive reasons, only.

*Appeal from Black Hawk District Court.*—HON. J. L. HUSTED, Judge.

MONDAY, DECEMBER 17, 1894.

THIS is a controversy between W. W. Miller and William Dorris as to which one of them shall be appointed executor of the estate of John F. Miller, deceased.  Miller was first appointed.  His appointment was afterward set aside, and Dorris was appointed. Dorris did not qualify within ten days after his appointment, and the court, on application of Miller, again appointed him to the position.  Dorris appeals.—*Reversed.*

*O. C. Miller* and *Hubbard & Dawley* for appellant.

*F. C. Platt* and *Boies, Couch & Boies* for appellee.

ROTHROCK, J.—John F. Miller died at Huntingdon, in the state of Pennsylvania, on the twenty-fourth day

of August, 1893. He was an unmarried man and a
bachelor, and had resided at Huntingdon for more than
twenty years. He left an estate valued at from seventy-
five to one hundred thousand dollars. About thirty-
six thousand dollars of his estate, consisting of money
and notes and other securities, is situated in this
state. These assets of the estate were in possession of
W. W. Miller, appellee, at the city of Waterloo. John
F. Miller made his last will and testament on the
eighteenth day of October, 1880, in which he appointed
William Dorris, appellant herein, to be executor of said
will. On the third day of May, 1888, he executed a
codicil to his will, and on April 5, 1892, he made a
second codicil to said will. These codicils made mate-
rial changes in the original instrument, some of which
evidently occurred by the death of one or more of the
legatees, and other provisions were made by reason of
a change in the intention of the testator as to the per-
sons he selected as objects of his bounty. But no
change was made in the appointment of the executor.
On the contrary, by the last codicil William Dorris was
again named as his executor, and appointed as a trustee
to manage and control a legacy of five thousand dollars
and to pay the interest thereof to legatees named, and
at their death to pay the principal to the board of relief
for disabled ministers of the Presbyterian church. The
will was duly admitted to probate, and Dorris was com-
missioned as executor at Huntingdon, Pennsylvania, on
the ninth day of September, 1893. Before that, Dorris
notified the appellee, Miller, by letter, that he was
executor, and requested Miller to forward him all
papers belonging to the estate. Miller answered this
letter on the ninth day of September, 1893, and
informed Dorris that he, Miller, had been appointed
administrator of the personal property of the estate in
the state of Iowa. Dorris procured a copy of the will
and the record of the probate thereof in Pennsylvania,

properly authenticated, and proceeded to have the same probated in this state, as provided in section 2351 of the Code, by commencing proceedings in the court below to have the will admitted to probate, and on the twenty-ninth day of September the same was duly admitted to probate as provided by law. On the third day of October following, Dorris moved for an order granting to him ancillary letters as executor, and to set aside the letters of administration previously granted to appellee, Miller. The motions were sustained on the twenty-fifth day of October, 1893, and on the same day Dorris was appointed executor under said will, and an order was made that letters should issue to him upon his filing a bond in the sum of seventy-five thousand dollars, with sureties thereon to be residents of this state, and the letters previously issued to Miller were revoked. The bond of Dorris was not filed within ten days from the date of the order, and on the eighth day of November, 1893, appellee, Miller, made an application that he be appointed executor of the will, on the ground that the position or office was vacant, because Dorris had failed to qualify as executor by filing a bond and taking the oath of office within ten days, as provided by law. This motion was made and heard without notice to Dorris or his attorney, and it was sustained, and Miller was appointed administrator with the will annexed. Afterward, and on the twenty-first day of December, 1893, Dorris filed his petition to set aside the appointment of Miller and for letters to issue to Dorris as executor. This petition set out at length the reasons why the bond was not filed and oath of office taken within ten days. All of this part of the petition was stricken out on motion, and Miller then demurred to the petition. The demurrer was sustained, and Dorris elected to stand on his petition, and it was dismissed at his cost.

We will not set out at length the matters of excuse

pleaded by Dorris for his failure to sooner file his bond and take the oath as executor. It is sufficient to say that he showed that he exercised all reasonable diligence, taking into consideration that he is a resident of a distant state, and was not acquainted with persons in this state having the requisite qualifications for sureties on so large a bond. He averred in his petition that he had procured sureties, and his bond had been duly presented to the clerk of the court who was ready and willing to approve the same. After the motion to strike from the petition was sustained, the only real question left for determination was whether the office was vacant for the reason that Dorris did not qualify in ten days. Much of the arguments of counsel are directed to that feature of the case. It is provided by section 2347 of the Code: "If a person appointed executor refuses to accept the trust or neglects to appear within ten days after his appointment and give bond as hereinafter prescribed or if an executor removes his residence from the state a vacancy will be deemed to have occurred." This section is found in chapter 2, title 16, of the Code, under the head of "Executors—Trustees." In the same chapter and title (section 2352), under the head of "Foreign Wills," the following language is found: "All provisions of law relating to the carrying into effect of domestic wills after probate shall so far as applicable apply to foreign wills admitted to probate in this state as contemplated in the preceding section." We refer to the Code of 1873, as it was adopted by the fourteenth general assembly, and published as provided by an act of that body found on pages 741, 742, and 743 of the authorized edition. The contention of counsel for appellee is that the provision declaring a vacancy is applicable to executors under both foreign and domestic wills. Section 2352 it seems to us is quite comprehensive in the use of the words "so far as applicable." There is, or

at least ought to be, no question that the executor appointed by the testator, in the absence of disqualification, should be commissioned by the court.   *Pickering v. Weiting,* 47 Iowa, 242.   The statute (Code, section 2354) provides that where an executor is not appointed by will, administration shall be granted to some other person.   Surely where an executor of a foreign will, duly appointed by the testator, and the appointment confirmed by letters issued to him in the foreign jurisdiction, ought to have preference over any other in the matter of ancillary administration.   Section 2368 of the Code, cited by counsel for appellee, does not appear to be applicable to this case.   That is a provision for the appointmen t of an administrator of a deceased intestate, and not a case where a foreign executor, appointed by will, co mplies with section 2351 of the Code.   In our jud gment, the court below should have overruled the motion to strike the parts of the petition which unquestionably showed that it presented good and sufficient grounds for the failure to file the bond and take the oath within ten days, because under the facts the limitation of ten days is not applicable to the proceedings after probate of this foreign will.   His right to execute the will as against the claim of the appellee was sustained when the appellee was removed and appellant appointed, and no doubt it would have been sustained by the court on the last application but for the thought that the lapse of ten days absolutely created a vacancy.   A consideration of all the provisions of the statute on the subject leads us to the conclusion that the limit of ten days has reference to domestic wills and administration.

II.  It is contended in behalf of appellant that the court exercised a pr oper discrétion in appointing the appellee in place of appellant because he had for many years managed the business of the testator in

this state. But all such considerations should be subordinate to the fact that the original will was executed in the year 1880, and Dorris was then selected as executor, and, although two codicils were made, the last in 1892, there was not only no revocation of the appointment of executor, but in the last codicil his appointment is recognized, and an important trust imposed upon him. We do not think it necessary to set out all of the reasons why we think appellee should not be the person selected to administer upon the assets in this state. We will say, however, that while the proceedings were pending to set aside and vacate his appointment he filed a claim against the estate for about seven thousand dollars for services in managing the affairs of the testator pertaining to the property in this state. The account is for services for nineteen and a half years at six hundred dollars a year, upon which credits for payments at sundry times are given in the sum of four thousand, five hundred and seventy-five dollars. In the statement made in connection with the account the following language occurs: "That your petitioner and the said John F. Miller, during all of the years aforesaid, occupied toward each other the most friendly relations, and that your petitioner had reason to and did firmly believe that it was the purpose and intention of the said John F. Miller to make your petitioner one of the legatees of his estate when he should make his last will and testament, and that by such will he would bequeath to your petitioner a large moiety of his said estate. And your petitioner avers his belief that such was the intention of said John F. Miller until a short time prior to his death. That, acting in said belief, when your petitioner sent to said John F. Miller a statement of his account and of his doings each year, he entered therein a charge for services in the sum of only three hundred dollars per year, and did not include in such

statement any disbursements actually made by him for and on account of said John F. Miller and for his benefit. And your petitioner further states that his services rendered as aforesaid were actually worth the sum of six hundred dollars per year, the amount he has charged in said account. That in the credit of the sum of $4,575, as shown in said account, he has included the said sum of $300 per year heretofore received by him. That since the incurring of said indebtedness, to wit, on the 24th day of August, 1893, the said John F. Miller has died. That since his death his will has been admitted to probate, as your petitioner is informed and believes, and in said will as finally constructed the said John F. Miller has only bequeathed to your petitioner the sum of one thousand dollars. That the estate of said John F. Miller is of the value of between seventy-five and one hundred thousand dollars, as your petitioner is informed and believes. That the said W. W. Miller has been duly appointed by the court administrator of said estate. Your petitioner therefore asks that said claim for the amount stated in said account be allowed; and that said administrator be ordered to pay the same according to law.''

Of course, appellee did not intend that he would as administrator resist or allow the payment of this account. His purpose, no doubt, was that a special administrator should be appointed by the court to act on his claim, as provided by section 2417 of the Code. We think it would be much better if he would stand aside, and present his claim to the executor appointed by the testator. The appointment of an executor thus deliberately and solemnly chosen should not be ignored, disregarded, and set aside unless for the most persuasive and controling reasons. The judgment of the district court is REVERSED.