THE BURLINGTON PROTESTANT HOSPITAL ASSOCIATION, Appellant, v. MICHAEL G. GERLINGER *et al.*

**Fraudulent Conveyance:** INSOLVENCY:  *Evidence.*  Where declarations of a debtor to the effect that certain property conveyed by him was all the property he had are proven, it will be presumed, in the absence of evidence to the contrary, in an action to set aside such conveyance, that such conditions continued to exist down to the time of the commencement of the action, and that the debtor had no property from which an execution could be satisfied.

SAME.  In an action to set aside a conveyance as fraudulent as to the grantor's creditors, the plaintiff must show that defendant was insolvent when action was brought

EVIDENCE OF CONSIDERATION.  In an action to set aside a conveyance as to the grantor's creditors, it appeared that the grantee's mother willed her a sum of money and that her father, the grantor, was named in the will as executor thereof, that he had never paid the grantee such bequest, that the father had boarded with the grantee, and that she had cared for him, but that there was no agreement as to the compensation for such board and care, and no record was kept of it.  It did not appear that her mother left any estate from which the bequest could have been paid, or that the father qualified as executor.  *Held,* that the testimony showed such an inadequacy of consideration, and a consideration of such doubtful character as to warrant setting aside the conveyance.

PLEADING.  An allegation that a conveyance was made in fraud of the rights of the creditor's grantors, and for the purpose of hindering, delaying, and defrauding them, is in the absence of a motion for a more specific statement, a sufficient allegation that the grantee participated in the fraudulent intent.

*Appeal from Des Moines District Court.*—HON. JAMES D. SMYTH, Judge.

WEDNESDAY, MAY 9, 1900.

THE plaintiff recovered judgment against M. Gerlinger, June 6, 1898, for the sum of one thousand one hundred and thirty-three dollars and sixteen cents and costs, on a note executed by him June 1, 1893, for funds borrowed of certain trustees of the Reformed German Presbyterian Church, of whom he was one. He was then, and continued to be the owner of lot 11 in Highland addition, and the east two acres of lot 5 in Wade's subdivision of section 9, township 69, in Burlington, until about the time the above suit was begun, when he conveyed said property to his daughter, M. R. Hapke, of Quincy, Ill. This is an action to set aside the deed, and subject the premises to the satisfaction of the judgment. The petition was dismissed, and plaintiff appeals.—*Reversed.*

*E. S. Huston* for appellant.

*Chas. Wilner* and *C. L. Poor* for appellees.

LADD, J.—This action to set aside a conveyance of certain lots executed by Gerlinger to his daughter March 26, 1896, was begun August 4, 1898. No execution had been previously issued and returned *nulla bona,* and it is insisted at the outset that, for all that appears, the plaintiff might have satisfied its judgment out of other property. True, Gerlinger had, at the time the deed was signed, but not included in it, what is denominated as the "old homestead," subject to a mortgage of one thousand six hundred dollars, and a little money; but this mortgage has since been foreclosed, and the property sold thereunder. Afterwards, but shortly before the suit in which judgment was entered, in an interview with Illick,

by whom it was bought, Gerlinger declared: "I am now a man seventy years old. I have no property but this property, which I deed to my daughter; and I thought I owed it to myself to deed that property to her, and then she should take care of me the rest of my life." Being without means then, his situation, in the absence of any showing to the contrary, must be assumed to continue unchanged. See *Sigler v. Murphy,* 107 Iowa, 129. The controlling inquiry is not as to the extent of his property when the conveyance was made, but at the time this action was begun. *Banning v. Purinton,* 105 Iowa, 642. He then had none of value.

I. Both Gerlinger and his daughter testified the agreed value of lot 11 was three thousand dollars, and that of the two-acre tract five hundred dollars, though Mrs. Hapke had no knowledge of the worth of either. This is her account of the transaction: "When my mother died on November 17, 1891, she left a will, which gave me three thousand dollars. My father was the executor, and has owed me that money ever since. Then, as I have told you before, my father has boarded with us at Quincy for six years about three months every year, and for that board owed me five hundred dollars. He told me that he did not have the money to pay me for the board, or for the money which my mother had willed to me, and offered to deed me the property in Burlington to pay me for the board, and for what my mother had willed to me, and I agreed to take it in that way." She not only boarded him, but did his washing and mending, and cared for him when sick. No special arrangement or promise had been previously made for her compensation, and neither party is able to give anything more than a mere estimate of the time he was with her each year. The will referred to was executed March 9, 1891, admitted to probate December 21, 1891, and bequeathed one thousand dollars each to Mrs. Hapke and a sister, and in its third paragraph willed to Mrs. Hapke "the sum of $2,000, of which, however, she shall be entitled to

the interest accruing thereon only during the remainder of the life of my said husband." Gerlinger was named as executor without bond, but never qualified as such, and no inventory or other paper, aside from the will, has ever been filed.

III.     It will be noted that no proof was offered that Mrs. Gerlinger left any property at her death, or that any passed into the hands of her husband because of being named executor.     No presumption arises from the making of a will that the testator left means out of which legacies bequeathed might be paid.     It is a matter of everyday observation that the contrary is often true.     Besides, in this case, the fact that Gerlinger never qualified, and no one was appointed to act in his stead during the seven or eight years following the probate of the will, tends to show that there was no property for administration.     But, even if there were, the mere naming of Gerlinger as executor in the will did not vest in him any title to the estate on her death.     Such would have been the rule under the common law, but not so under the statutes of this state.     He (the executor) is a mere trustee, taking nothing in his own right, but everything for others.     Sections 3299 and 3300 of the Code provide that, when the probate of a will cannot be immediately granted, a special administrator may be appointed to preserve the estate until full administration is granted. Section 3301 requires qualification by taking oath to faithfully discharge the duties imposed upon him by law, according to the best of his ability, before entering on the discharge of his duties as executor. Thereupon letters are issued by the clerk giving the executor the power authorized by law.     Section 3303.     Unless the giving of a bond is waived by the testator, the executor must furnish one before entering upon the discharge of his duties.     Even if waived, the court may still, in its discretion, require it, and the appointment of an executor may, for certain causes, be rejected, and another substituted by the court.     Possibly, the party nominated in

the will may, before its probate, assume care of the estate when necessary for its protection and preservation. *People v. Barker,* 150 N. Y. 54 (44 N. E. Rep. 785). But beyond this his authority is derived from the court and his qualification. In *Shoenberger's Ex'r v. Institution,* 28 Pa. St. 465, it was said: "At death a man's estate really passes into the hands of the law for administration, as much when he dies testate as intestate, except that in the former case he fixes the law of its distribution after payment of debts, and usually appoints the persons who are to execute his will. But even the appointment is only provisional, and requires to be approved by the law before it is complete; and therefore the title to the office of executor is derived rather from the law than from the will." Naming a person as executor does not, as at common law, make him executor in fact upon the testator's death, but ordinarily gives him the right only to become such by compliance with the provisions of the statute. *Stagg v. Green,* 47 Mo. 501; *Wood v. Cosby,* 76 Ala. 558; *Roberts v. Stuart,* 80 Tex. 387 (15 S. W. Rep 1108); *Diamond v. Shell,* 15 Ark. 26; Woerner, Administration, section 172. Gerlinger then cannot be presumed to have acquired the property, if any, left by his wife under her will as executor. The alleged indebtedness of three thousand dollars is based entirely on this supposed obligation, but as none existed, and as no property of the testator is traced into his hands, this part of the consideration for the deed utterly failed. As already stated, there has been no previous talk concerning the payment for board during the six or seven years, which was a part of the agreed price, and the length of time Gerlinger stopped with his daughter each year was a matter of conjecture. Its worth was merely estimated to offset the value of the two acres. Very evidently he had made his home with her a short time each year without thought of compensation, and payment by conveying this property was purely an afterthought. In view of the gross inadequacy of this as a con-

sideration, and its doubtful character, and the other circumstances disclosed, we are of the opinion that the conveyance should be set aside as fraudulent, and the lots subjected to the payment of plaintiff's judgment.

IV. The petition alleged want of consideration, and that the deed "was in fraud of the rights of creditors of the grantor, and made for the purpose of hindering, delaying, and defrauding them." The defendants insist there is no allegation of participation on the part of Mrs. Hapke. The answer specifically denies that this was the purpose in making the conveyance, but, if it was in fraud of creditors, both parties must have participated. We deem the allegation, in the absence of a motion for more specific statement, sufficient.—REVERSED.