123    89
134    297

## IN RE ESTATE OF LUISA VAN VLECK, Deceased.

**Estates of Decedents:** APPOINTMENT OF EXECUTORS. Naming one an executor in a will does not make him the executor upon the death of testatrix but merely confers the right of appointment, and where no appointment is made, the ten day limitation in Code section 3290 relating to vacancies in the office has no application.

**Same.** The court is not required to appoint the executor named in a will, and where a beneficiary is named and the conditions have so changed that such an appointment would be inimical to the interests of other beneficiaries, the court may in the exercise of its discretion reject the nomination.

*Appeal from Plymouth District Court.*—HON. F. R. GAY-NOR, Judge.

### MONDAY, FEBRUARY 15, 1904.

APPLICATION of Balfour H. Van Vleck for appointment as executor of the estate of Louisa Van Vleck, deceased, was denied and he appeals.—*Affirmed.*

*Struble & Struble* for appellant.

*McDuffie & Keenan* for appellee.

LADD, J.—Louisa Van Vleck died in 1897, leaving two children, Balfour H. Van Vleck and Charltena V. V. Anderson. By her will, which was admitted to probate in September, 1898, she gave the son an undivided one-half of her estate, and to the daughter her household furniture and clothing, $100, and disposed of the remainder of her property as follows: "4th. I give, devise and bequeath to my executors hereafter named all the rest, residue and remainder of my property to be held in trust and used for the purpose as follows, to-wit: The same to be productively invested in real estate securities and interest to be paid an-

nually to my said daughter, Charltena, during her life time and in case it shall appear to the satisfaction of my said executors and trustees that a portion or all of the principal shall be needed for the support of my said daughter or for the support and education of her children, then in that case they are hereby authorized to use the part or all of the principal for the purpose aforesaid, at the death of my said daughter then the said bequest to go to her children, but if my said daughter shall die without leaving living issue then in that case the said remaining property to go to my son, Balfour H. Van Vleck." B. M. Gurnee, a brother, residing in Wisconsin, and the son were nominated as executors, but prior to October, 1902, neither had been appointed by the court, nor applied therefor. The son filed a petition praying for such appointment October 21, 1902, to which his sister and children interposed written objections, which he undertook to meet by a counter statement and affidavit. The refusal to appoint was

1. APPOINTMENT based on the record as stated. Naming him as of executors. executor in the will did not make him such upon the testatrix's death, but merely gave him the right to such appointment upon compliance with the law of this state. *Burlington Protestant Hospital Ass'n v. Gerlinger*, 111 Iowa, 293. Had he then applied, doubtless no valid objection could have been urged against his appointment. *Kidd v. Bates*, 120 Ala. 79 (23 South. Rep. 735, 41 L. R. A. 154, 74 Am. St. Rep. 17;) *Berry v. Hamilton*, 51 Ky. 191 (54 Am. Dec. 515); *Holladay v. Holladay*, 16 Or. 147 (19 Pac. Rep. 81); *Hartnett v. Wandell*, 60 N. Y. 346 (19 Am. Rep. 194); *In re Bauquier*, 88 Cal. 302 (26 Pac. Rep. 178, 532); *Pickering v. Weiting*, 47 Iowa, 242; *In re Miller*, 92 Iowa, 741. Our statute provides "that, if a person nominated as executor refuse to accept the trust, or neglect to appear within ten days after his appointment and give bond as hereinafter prescribed, or if an executor removes his residence from the state, the office shall be vacant." Section 3290, Code. As there was no appointment, the ten day limitation did not apply.

But he had presented the will for probate and neglected for more than four years to have the executors nominated appointed by the court. In the meantime relations of those 2. SAME. taking under the will with respect to their property interests had undergone a radical change. Upon testatrix's death Van Vleck took possession of all the personal property left by her, and the value thereof is now in dispute. He went into possession of four hundred and thirty-two acres of land in Plymouth county, and has appropriated the rents and profits derived therefrom for more than five years to his own use, and clearly indicates the intention not to account for the same without litigation. It is conceded that he and Mrs. Anderson entered into an arrangement under the terms of which she executed to him a conveyance to the above-mentioned land October 19, 1901, in consideration of his assumption of all indebtedness against the estate and the execution to the executors of a note of $5,065.44 for her sole benefit, payable in eight years, with interest at 5 per centum per annum from May 1, 1899, secured by mortgage on said land. She now asserts that she was induced to execute the deed by his misrepresentations of the value of the property, and that, in any event, she was powerless to dispose of the property devised to the executors by the will. We have no notion of expressing an opinion as to the rights of the parties to these controversies. It is enough that they exist, and that Mrs. Anderson and their children must, of necessity, rely upon the executors to protect her interest in the property. Van Vleck took an undivided half of the estate under the will, but the other half passed to the executors, to be managed for the benefit of Mrs. Anderson and children. By appropriating the personal property, as well as the rents of all the realty, and undertaking to divest the executors of all they might acquire under the will, he placed himself in hostility to its provisions, which, as executor, he would be bound faithfully to carry out. All these matters have arisen since the testatrix's death, and, of course, were not taken into consideration by her in selecting the appellant as one of the execu-

tors. It cannot be assumed that she anticipated his appoint-
ment, entirely proper at the time, would later become inimi-
cal to the best interests of those upon whom her bounty was
bestowed. Where conditions have so changed subsequent to
the death of a decedent that, had he anticipated them, he
would, in all reasonable probability, as a prudent person have
selected another as executor, the court is at liberty, in the
exercise of its sound discretion, to reject the nomination con-
tained in the will. This is not repudiating the right of the
deceased to select whomsoever he will, but saying that with
full knowledge of the situation another would have been
chosen. The appellant, by putting himself in a position of
antagonism to the will and those for whose benefit the execu-
tors were to act, in effect renounced the executorship, and the
court rightly appointed another.—AFFIRMED.