IN RE ESTATE OF M. B. DOOLITTLE, Deceased.

**EXECUTORS AND ADMINISTRATORS:** Appointment—Confirming
1  **Request of Testator.** The nomination in a will of a certain person as executor will be confirmed by the court unless strong and persuasive reasons against so doing are made to appear.

PRINCIPLE APPLIED: The appointment of the one requested by the testator held to be proper, though she was testator's divorced wife, holding a claim against the estate, the testator having had opportunity to change his will and not having done so.

**EXECUTORS AND ADMINISTRATORS:** Appointment—Discretion
2  **of Court.** The discretion of the probate court, in appointing as executor the person requested by testator in his will, will not be questioned on appeal, unless the action of the court appears to have been arbitrary, unjust and without reason.

*Appeal from Howard District Court.*—HON. A. N. HOBSON, Judge.

TUESDAY, DECEMBER 15, 1914.

REHEARING DENIED MONDAY, MARCH 22, 1915.

Appeal from an order appointing Anna E. Doolittle as an executrix, with J. E. Doolittle and John H. Jones as executors of the last will and testament of M. B. Doolittle, deceased.—*Affirmed.*

*Reed & Pergler,* for appellant.

*Edwin A. Church,* and *John McCook,* for appellees.

DEEMER, J.—M. B. Doolittle died testate July 15, 1913. By the terms of his will he devised to his wife, Anna E. Doolittle, eighty acres of land and certain personal property, and the remainder of his estate was specifically devised to various

heirs, with a provision that if anything be left it should go one-third to his wife, and the remainder to named heirs. He nominated his wife, Anna E. Doolittle, his son, J. E. Doolittle, and the then county auditor as executors of his will. He made three codicils to this will, one June 28, 1905, another May 27, 1910, and the third November 28, 1911. In these he made no change in the provision for his wife, but in the second codicil he changed his nomination of executors to J. H. Jones, F. C. Blandin and J. E. Doolittle. In the last codicil he again named Anna E. Doolittle, J. E. Doolittle, and J. H. Jones, county auditor, as his executors. The will, with its codicils, was filed for probate July 19, 1913, and on October 6th of the same year J. E. Doolittle filed objections to the confirmation and appointment of Anna E. Doolittle as an executrix.

In these objections he alleged that Anna Doolittle, the wife, brought action against the deceased for a divorce some time in February of the year 1912, based upon cruel and inhuman treatment; that she prosecuted the action to a decree on January 31, 1913; that by the decree the wife was given a divorce and awarded alimony which consisted of a house and lots in the city of Cresco, with $15,000.00 additional; and the decree further provided that: "In case Anna E. Doolittle shall be compelled to pay any part of any judgment or judgments in litigation with one A. T. Jolly or with the administrator of Mrs. A. T. Jolly estate, that Anna E. Doolittle may recover such amount or amounts from decedent, and that decedent's property be held therefor as between Anna E. Doolittle and decedent."

It was further decreed that in case of an appeal from the decree by the decedent, said decedent should pay to the clerk of the court, for the benefit of Anna E. Doolittle, as temporary alimony, pending the appeal, seventy-five dollars each month.

Said decree, and each part thereof, was appealed from by decedent, on the 10th day of February, 1913, and the

appeal was perfected on that day. On the 21st day of March, 1913, Anna E. Doolittle appealed from that part of the decree giving and allowing her permanent alimony, and her appeal was perfected on the day last mentioned.

It is also stated in these objections that Anna E. Doolittle is a creditor of the estate, and that her interests were and are antagonistic thereto, and inconsistent therewith. It was also stated:

"That this objector believes that the decree aforesaid was erroneously granted and that thereby decedent's property was wrongfully diverted from its appropriate channel of devolution, and that to this end the personal representatives of decedent should prosecute the appellate proceedings commenced by decedent, in order that conflicting rights between the heirs, devisees and legatees of decedent and Anna E. Doolittle might be finally determined."

The objections further state:

"That John McCook, Esq., attorney and counsellor, was and is attorney of record for A. T. Jolly and the estate of Mrs. A. T. Jolly and prosecuted the above litigation in their behalf; and that said John McCook, Esq., is now attorney for Anna E. Doolittle in regard to matters growing out of the decedent's will.

"That this objector is a son of the decedent, a devisee and legatee under the will and nominated as one of the executors by said will.

"That at the May, 1913, term of this court there was rendered, in the case of A. T. Jolly v. M. B. and Mrs. M. B. Doolittle, a judgment for seven hundred and fifty dollars against M. B. Doolittle and Mrs. M. B. Doolittle; that on the 28th day of May, 1913, M. B. Doolittle appealed from said judgment to the Supreme Court of Iowa by serving a notice of appeal on John McCook and Frank Sayre, attorneys for A. T. Jolly, and service of said notice was accepted

by John McCook, Esq., and P. C. Blandin, clerk of the district court of Iowa in and for Howard County.

"That there is still pending in this court the case of S. A. Sutton, administrator of the estate of Mrs. A. T. Jolly v. M. B. Doolittle and Mrs. M. B. Doolittle, and the prayer of the petition in said case asks for a judgment of $10,000.00 v. M. B. Doolittle and Mrs. M. B. Doolittle; and John McCook, Esq., is one of the attorneys for said administrator."

The case came on for hearing on these objections and it was stipulated that the facts recited in these objections, as distinguished from legal conclusions, were true, and the trial court also read into the record the following statement:

"The court upon its own motion states that it understands that the property of M. B. Doolittle, deceased, is largely real estate; that it has been stated during this hearing that the personal property belonging to the estate does probably not exceed five thousand dollars; that the indebtedness is probably not in excess of from two to three thousand dollars, barring possibly court costs in some of the cases, the Jolly case and the divorce case, spoken of in the stipulation just entered. In relation to the paragraph referring to temporary alimony, an allowance of $75.00 a month, the court states that at the time the decree was entered that it understood Mrs. Doolittle to be entirely without means of support excepting as she received such means from M. B. Doolittle, that in case of an appeal and the execution of bonds the court was fearful that the means of subsistence of Mrs. Doolittle would be cut off and allowed her the $75.00 per month contingent upon the appeal being taken so as to secure to her an independent means of support during said appeal.

"In relation to the order relating to the payment by M. B. Doolittle of another judgment which should be entered in the Jolly case, the court had in mind the fact that from the voluminous record constituting the record in the divorce case submitted to the court that the amount of the estate of

M. B. Doolittle was somewhat in doubt; that the court thought it possibly might exceed largely the amount found by the court; that in order to insure to Mrs. Doolittle the amount of alimony which it thought she should receive on the record as presented to the court, the court in order to guard against the diminution of the alimony by any contingency decreed as a part of said alimony that Mr. Doolittle pay the judgment in the Jolly case, and that it was not the intention of the court to grant any relief in any other manner than as a part of the application for alimony submitted to it.

"The court further states that the said M. B. Doolittle died on the 15th day of July, 1913, and that the court has, it believes, personal knowledge of the fact that up to the date of his death he was seemingly very much attached to Julius E. Doolittle, his son, and to Mr. John H. Jones, and that the facts of the litigation in the Doolittle estate were all known to Mr. Doolittle, and no change has occurred in his affairs except what were fully known to him at the time of his death and while he was apparently in the possession of his senses."

Upon this record the trial court made the following order and ruling:

"Nomination of J. E. Doolittle, Anna E. Doolittle and John H. Jones as executors approved and confirmed. Bond of executors fixed at $10,000.00. In case executors elect to execute individual bonds the amount of such bond is fixed at $10,000.00 each. It is ordered by the court that the executors proceed and act concurrently and that in the event they are unable to do so, that no action be taken until application for orders is made to the court or judge and directions and orders thereon entered. J. E. Doolittle duly excepted."

The appeal is from this ruling.

The main points made for the appellant are that the court was not bound by the nominations made in the will; that

one whose interests are adverse and hostile to the estate should not be appointed an executrix, even though named in the will; that one executor or administrator, where there are two or more, cannot sue another; and that, as a matter of policy, one who has a claim in litigation against one deceased should not be appointed administrator or executor of the latter's estate.

1. Executors and Administrators : appointment: confirming request of testator.

It is true, of course, under our statutes and decisions that the court is not bound to recognize the nomination of an executor by will. The probate court has a discretion in such matters, and may or may not recognize an appointment by will. *In re Van Vleck's Estate,* 123 Iowa 89; *Burlington Assn. v. Gerlinger,* 111 Iowa 293.

But under our rule it was said in *Pickering v. Weiting,* 47 Iowa 242: ''Where a person is named as executor in a will it is presumed that in the judgment of the testator he possessed a special fitness for the discharge of the trust, indeed the very reason that he is named at all must be because the testator desired that he should administer rather than any one else.''

Again in *In re Miller,* 92 Iowa 741, this court said: ''There is, or at least ought to be, no question that the executor appointed by the testator, in the absence of disqualification, should be commissioned by the court. . . . But all such considerations should be subordinate to the fact that the original will was executed in the year 1880, and that Dorris was then selected as executor, and, although two codicils were made, the last in 1892, there was not only no revocation of appointment of executor, but in the last codicil his appointment is recognized. . . . The appointment of an executor thus deliberately and solemnly chosen should not be ignored, disregarded and set aside unless for the most persuasive and controlling reasons.'' And in *In re Estate of Smalle,* 150 Iowa 391, the court said: ''Such appointment must stand

unless it is made to appear that the appointment would not have been made by the testator with knowledge of the conditions existing at the time the court is asked to confirm such appointment." See also sustaining the same doctrine: *In re Fisher Estate*, 128 Iowa 628; *Fry v. Fry*, 155 Iowa 254.

The net result of a study and analysis of our cases is that the matter of recognizing the nomination lies within the sound discretion of the court, and that the nomination

2. EXECUTORS AND ADMINISTRATORS: appointment: discretion of court.
will be recognized in the absence of a rather strong showing against the appointment. Treating the matter as discretionary with the court, and accepting the statements of the judge as to his reasons for making the appointment, we see no reason for holding that there was such an abuse of discretion as to call for a reversal of the case. It is not enough that we would have made a different order, as we doubtless would have done, as an original proposition; for more is required to disturb a discretionary order than to convince us that, as an original proposition, we would have done otherwise. An abuse of discretion means more than an error in judgment. The error must be such as to convince us that it was arbitrary, unjust and without reason; and such does not appear to be the situation here.

No personal hostility between plaintiff and the other executors is shown, and while a claim is made that Mrs. Doolittle would not care to preserve the assets of the estate, the record shows that she has a residuary claim under the will and for that reason it would be to her interest to conserve and preserve the estate. Deceased knew for some months before his death of all the claims which his wife is now making. The decree of the lower court in the divorce case had been passed, and an appeal had been taken by him, yet he did not on that account make any change in his will so far as his former wife was concerned, but allowed and permitted it to remain as it was after the last codicil, hitherto mentioned, was made. This fact brings the case within the rule of Miller's case, *supra*.

It will be noticed that three executors were named by the will, and codicil, and that these three were appointed by the court. Two of them, being a majority, might act and should act after consulting with their associate or after giving her a chance to act. As we understand the rule a majority may act in such cases, and their conclusion is binding, although the third may not concur. Moreover, the court in its order fortified the entire matter by requiring the executors to act concurrently, and not by majority, and in the event of any disagreement, to submit the matters in dispute to him. This sufficiently safeguarded the matter in that he retained such control over the conduct of the executors as to thoroughly protect the estate.

For the reasons stated we do not feel justified in interfering with the order, and it is, therefore, *Affirmed*.

Ladd, C. J., Gaynor and Withrow, JJ., concur.