IN RE ESTATE OF FREDERICK SCHNEIDER.

No. 44245.

FEBRUARY 8, 1938.

REHEARING DENIED JUNE 24, 1938.

Harold W. Vestermark, for appellant.

William R. Hart and Kenneth Dunlop, for appellees.

SAGER, J.—The testator Schneider died on June 18, 1937. On July 9, 1937, M. J. Kessler, who seems to have been the spokesman for the objecting heirs, filed a petition asking that he be appointed to administer the estate. The substance of the reasons for objecting to Taylor, the named executor, was: "That none of the heirs of Frederick Schneider desire the said Thomas Taylor to administer upon the property of the deceased"; that Taylor was a tenant on the farm under a lease which provided for the payment of crop shares, and that therefore the interests of Taylor were adverse to those of the estate; that the said Taylor claimed that Schneider in his lifetime gave him certain personal property, and that such claim was adverse to the interests of the estate. The petition further said that the interests of the said Taylor "in many other respects are adverse to the interests and claims of the estate, and that it is for the best interests of said estate that the said Thomas Taylor be not named as executor." No facts are stated as the basis of these allegations. The petition goes on further to say that the testator "was greatly weakened, mentally as well as physically, and that while we do not desire to contest said will and are satisfied that the will itself may be used to determine how the estate of the said Frederick Schneider may and shall be divided, nevertheless we respectfully urge upon this court that under the circumstances as they now exist, and in view of the mental condition of the decedent prior to his death and at the time said will was drawn, it would be better if M. J. Kessler" be appointed.

There are no facts in the record, except as will be hereafter noticed, to back this statement.

On July 23, 1937, a hearing was had and Taylor, designated executor, was called by appellees as a witness. Without going into detail, it appears from the record that he had for a long time been a tenant of Schneider, and that at no time had there been the slightest difficulty between landlord and tenant. He admitted that Schneider had given him a team of horses, the younger of which was fifteen years old (the age of the other not being disclosed), because testator was unable to take care of them. Taylor also said that he offered to pay $35 for the harness but Schneider refused to accept it. While giving his testimony he claimed both the horses, but, with reference to the harness

said, in answer to a question whether he claimed the harness: "Well, I am not firm about it. If they want the harness they can have it." That the relationship between Taylor and his landlord was satisfactory and friendly to the last degree is shown not only by their yearly settlements made without trouble, but also by the fact that while Schneider was in the hospital Taylor visited him from time to time, something that was not done, so far as the record discloses, by any of the collateral heirs who are objecting to the executor named in the will. In explaining why Taylor was insisting on his appointment, he said: "I didn't have any real reason for wanting to serve but I would want to think it over and I told them (three carloads of collateral heirs who appeared at his place three hours after the funeral) I wouldn't be stubborn. They went ahead, they gave me until ten o'clock the next day to resign, if I didn't they would make plenty of trouble for me * * *." He continues his story at this point by telling what inducements were offered if he would resign.

It appears that in the absence of Mr. Hart, attorney for the heirs, they were permitted to see the will in Mr. Hart's office before it had been filed and opened in the office of the clerk. From the attorney's office they apparently hied themselves forthwith to threaten or cajole Taylor into resigning. A reason the heirs gave why they were insisting on the withdrawal of Taylor was: "* * * There was some of them (heirs) could look after *their own affairs.*" (Italics ours.) These things happened within three hours after the funeral, at the home of Taylor.

Kessler, who was, as has been indicated, the spokesman apparently of the group of objecting heirs, on the witness stand said: "I am the man who asked the court to admit the will of Frederick Schneider to probate and to appoint myself as administrator." Notwithstanding the request that he be appointed, he testified that: "I desire that the Iowa State Bank and Trust Company of Iowa City be named as administrator with the will annexed." The resistance to the appointment of Taylor was, he said, "for the best interests of the estate," though no reason why this should be so is given except that he "didn't think a man should do his own dividing of the grain." That, he explained, was the main reason why he objected to Taylor—that he was a tenant. Notwithstanding this he testified on cross-exami-

nation that he did not regard the fact that Taylor happened to be a tenant as a conflicting interest against the estate.

The record might well be elaborated, but this will be sufficient to indicate in a general way what was before the court. The record is absolutely barren of any valid reason why Taylor should not be appointed, as was the wish of the testator expressed in these words: "I hereby nominate Thomas Taylor, my tenant, as executor of this my last will and testament." Not only that but counsel for appellees himself said that Schneider told him he wanted his tenant named as executor.

As against this we have only the unsupported conclusion of the objectors that it would be to the best interests of the estate to oust Taylor and that it would be better to have Kessler appointed, and that the heirs regarded themselves as able to attend to "their own affairs." We should add that Kessler in his testimony stated, as has been heretofore pointed out, "that I desire that the Iowa State Bank and Trust Company of Iowa City be named as administrator with the will annexed." In other words, it seems to be the theory of these heirs that the desire of one of them (Kessler) to name the administrator of the will of Schneider should overrule and annul the solemnly expressed wish of the testator as set forth in his will. If there is any rule of law to sustain any such contention we have not been able to find it. But it is asserted, presumably as a makeweight in favor of the ousting of Taylor, that there are something over thirty heirs of Schneider living in the state of Iowa; the inference therefrom presumably being that they or some of them should have preference in the administration of this estate. But this fact, if it be a fact, has implications not at all favorable to the appellees' side of the controversy. If Schneider did not know all or any of these collateral relatives, there was no reason why he should appoint one of them. If he did know them, he may have had abundant reason for not doing so. So far as we have been able to discover from a careful reading of the record, they never displayed the slightest interest in his well-being or his financial affairs until the time came when they might hope to parcel his estate out among themselves.

The court, after the hearing, without giving its reasons, ruled that: "Thomas Taylor should not act as executor of the said will." We find no basis for such ruling, and in saying this we do not overlook the rule in this state that the appointment of

personal representatives lies largely within the discretion of the court. However, we fail to find, here or elsewhere, any warrant or authority for ousting a designated executor of unimpeached character upon the desire of Kessler, or someone else, to have a trust company appointed administrator with the will annexed. There must be as a basis for the discretion of the court some more tangible and substantial reason than the wishes of collateral relatives.

Since this court has declared its position upon matters of this kind, we content ourselves with quoting from the opinion of Deemer, J., in In re Estate of Doolittle, 169 Iowa 639, at p. 644, 149 N. W. 873, 874:

"It is true, of course, under our statutes and decisions that the court is not bound to recognize the nomination of an executor by will. The probate court has a discretion in such matters, and may or may not recognize an appointment by will. In re Van Vleck's Estate, 123 Iowa 89, 98 N. W. 557; Burlington Assn. v. Gerlinger, 111 Iowa 293, 82 N. W. 765.

"But under our rule it was said in Pickering v. Weiting, 47 Iowa 242: 'Where a person is named as executor in a will it is presumed that in the judgment of the testator he possessed a special fitness for the discharge of the trust, indeed the very reason that he is named at all must be because the testator desired that he should administer rather than anyone else.'

"Again, in In re Miller's Estate, 92 Iowa 741, 61 N. W. 229, this court said: 'There is, or at least ought to be, no question that the executor appointed by the testator, in the absence of disqualification, should be commissioned by the court.' "

We further said, in In re Estate of Smale, 150 Iowa 391, at p. 392, 130 N. W. 119, 120, Sherwin, C. J., speaking for the court:

"As we have said, Joseph Tubb was one of the executors appointed by the testator, and such appointment must stand, unless it is made to appear that the appointment would not have been made by the testator with knowledge of the conditions existing at the time the court is asked to confirm such appointment. * * * Joseph Tubb did nothing, either before or after the death of Smale, that would have shaken the latter's confidence in him."

If it is thought desirable to pursue the inquiry into other jurisdictions, reference may be had to note to State of Washington, ex rel. v. Superior Court, 95 A. L. R. 819, at p. 828.

Finding no justification for the substitution of this trust company for the designated Thomas Taylor, we hold that the court was in error in displacing the executor named in the will, and its judgment and order is reversed.—Reversed.

STIGER, C. J., and ANDERSON, RICHARDS, MILLER, and KINTZINGER, JJ., concur.