# IN THE SUPREME COURT OF IOWA

No. 21–0227

Submitted March 24, 2022—Filed May 6, 2022

**TODD R. RAND,**

Appellant,

vs.

**SECURITY NATIONAL CORPORATION** d/b/a **SECURITY NATIONAL BANK,**

Appellee.

---

Appeal from the Iowa District Court for Woodbury County, Steven J. Andreasen, Judge.

The beneficiary of an estate appeals from an adverse grant of summary judgment in favor of the personal representative of the estate on claims related to the administration of the estate. **AFFIRMED.**

McDonald, J., delivered the opinion of the court, in which all participating justices joined. McDermott, J., took no part in the consideration or decision of the case.

Stanley E. Munger (argued) of Munger, Reinschmidt & Denne, L.L.P., Sioux City, for appellant.

Joel D. Vos (argued) and John C. Gray of Heidman Law Firm, L.L.P, Sioux City, for appellee.

Ryan G. Koopmans and Wayne E. Reames of Belin McCormick, P.C., Des Moines, for amicus curiae Iowa Academy of Trust and Estate Counsel.

**McDONALD, Justice.**

The question presented in this appeal is whether the beneficiary of an estate can file a separate suit outside probate against the personal representative of the estate for claims arising out of and related to the personal representative's fees for administering the estate. For the reasons set forth below, we answer the question in the negative.

I.

Roger Rand died testate on August 29, 2016, and his will was admitted to probate shortly after his death. Roger's will nominated Security National Bank as the personal representative of his estate. The will, as amended by a codicil, named five beneficiaries of Roger's estate: Roger's girlfriend, Constance Anderson, and his four children, including plaintiff Todd Rand. The gross value of Roger's estate was later determined to be $19,733,127.40.

Roger's will was drafted by the law firm Crary, Huff, Ringgenberg, Hartnett & Storm, P.C. After Roger died, attorney Larry Storm of Crary Huff informed Security National it had been nominated as the personal representative of the estate. Security National hired Storm and Crary Huff to serve as attorneys for the estate.

In a letter dated September 20, 2016, Security National notified the beneficiaries of the estate that the bank had been selected as the personal representative of the estate. Included with this letter was a document entitled

"Estate Administration Overview." The Estate Administration Overview included

the following statement regarding fees for the administration of the estate:

> Iowa law under the supervision of the District Court authorizes the compensation of the executor and attorney handling the estate. The fees are based on the appraised value of the assets of the estate reported for inheritance tax purposes whether taxable or not. The appraised value is taken as of the date of death. The fees are computed as follows:

> 6% of the first $1,000.00
> 4% of the next $4,000.00
> 2% of the remaining value

> One-half of these fees may be paid at the time the inheritance tax return is prepared and one-half when the estate is closed.

> Under certain circumstances, the executor is allowed to charge a fee for extraordinary services. If extraordinary services are provided, the Security National Bank will be charging an hourly fee. Below is a summary of the charges that may be applicable:

> Trust Department Head . . . . . . $200/hr.
> Officers . . . . . . . . . . . . . . . . . . .$175/hr.
> Advisors . . . . . . . . . . . . . . . . . $150/hr.
> Administrative Assistants . . . . . . $75/hr.

It is not disputed by the parties that the schedule of fees in the Estate

Administration Overview reflected the maximum fees for ordinary services that

a personal representative could receive. *See* Iowa Code § 633.197 (2016) (setting

maximum compensation for ordinary services by personal representatives).

At some point after receiving this letter, Todd hired an attorney. On

February 9, 2017, Todd's attorney wrote Storm seeking clarification of the fees

for the administration of the estate. Storm replied that Crary Huff and Security

National would file an application for fees in the probate court at the appropriate

time and that the fees would be determined by the probate court in accord with

the Probate Code. Approximately six months later, Crary Huff Huff and Security National filed an application for fees. They each requested $394,782 in fees for ordinary services to the estate (for a total of $789,564), which was the maximum fee allowed pursuant to Iowa Code section 633.197. Crary Huff also requested $137,791.98 for extraordinary fees, representing fees and costs incurred in collecting a debt owed to the estate.

Through counsel, Todd objected to both applications. With respect to Security National, Todd claimed the fee schedule in the Estate Administration Overview was arbitrary, ambiguous, and misleading. Specifically, the Estate Administration Overview failed to disclose the fee schedule was the maximum fee allowed for ordinary services. Todd also claimed Security National breached its fiduciary duties and engaged in misrepresentation in multiple respects. First, Todd alleged Security National breached its fiduciary duties in failing to inform Roger of its fees at the time he nominated Security National as personal representative of his estate. Second, Todd alleged Security National breached its fiduciary duties owed the beneficiaries by failing to disclose its fee schedule to them before undertaking its duties as personal representative. Third, Todd alleged Security National breached a duty to the beneficiaries by charging an unreasonably high fee for its services. Fourth, Todd alleged Security National breached a duty in failing to secure the consent of Roger's estate for the fees it would charge before undertaking its services and in failing to disclose its intent to seek those fees. The thrust of his claims was that Security National deprived

the beneficiaries of the opportunity to "replace the Personal Representative early on with another that would live up to its fiduciary duties for a reasonable fee."

The probate court held three days of hearings on Security National's fee application. In a lengthy and well-reasoned decision, the probate court exercised its discretion and reduced the fees to both Crary Huff and Security National below the requested amounts. *See* Iowa Code § 633.197 (stating a personal representative is "allowed such *reasonable* fees as may be determined by the court for services rendered" (emphasis added)); *In re Est. of Randeris v. Randeris*, 523 N.W.2d 600, 607 (Iowa Ct. App. 1994) (reviewing probate court's fee award for an abuse of discretion). The probate court found "there was a significant and unusual amount of work to be performed" by Security National in administering Roger's estate but held the claimed amount of time expended was nonetheless "inflated or include[d] a large amount of unnecessary work." The probate court approved fees for ordinary services in the amount of $160,000.00 to Security National (compared to its $394,782 request). The probate court approved fees for ordinary services in the amount of $205,000 to Crary Huff (compared to its $394,782 request). For extraordinary services, the probate court awarded Crary Huff $110,568.23 in fees and costs (compared to its request for $137,791.98). In total, the probate court reduced the fees to Security National and Crary Huff nearly in half, from $927,355.98 to approximately $427,000. No party appealed the order approving fees. The probate court later issued an award of additional extraordinary fees to both Security National and Crary Huff, to which Todd did not object.

Todd filed this suit against Security National in September 2018, the month after the probate court resolved the fee applications. In his petition, Todd asserted claims for breach of fiduciary duty, negligent misrepresentation, and fraudulent misrepresentation, all arising out of Security National's service as the personal representative of the estate. Rand also asserted "claims" for emotional distress damages, punitive damages, and attorney fees incurred in the course of challenging Security National's fee application in probate court. On Security National's motion for summary judgment, the district court held Todd's claims should have been asserted in the probate court or otherwise failed as a matter of law. We retained Todd's timely appeal.

## II.

"The standards for granting summary judgment are well established and need not be repeated in full herein." *Kostoglanis v. Yates*, 956 N.W.2d 157, 158 (Iowa 2021). Review of summary judgment rulings is for correction of errors at law. *Id.* "Summary judgment is properly granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *McQuistion v. City of Clinton*, 872 N.W.2d 817, 822 (Iowa 2015). The evidence is viewed in the light most favorable to the nonmoving party, including all legitimate inferences. *Banwart v. 50th St. Sports, L.L.C.*, 910 N.W.2d 540, 545 (Iowa 2018).

## III.

"In Iowa, probate courts have special jurisdiction exercised by a separate division of a court of general jurisdiction." *Est. of Randeris*, 523 N.W.2d at 604. That special jurisdiction includes "the appointment of personal representatives

. . . [and] the administration, settlement and distribution of estates of decedents." Iowa Code 633.10(1) (2018). "[A]lthough the probate court is not open to ordinary actions at law or suits in equity, it has plenary jurisdiction to determine matters essential to probate business before it." *In re Guardianship of Matejski*, 419 N.W.2d 576, 578 (Iowa 1988) (en banc). "The district court's probate jurisdiction, however, does not include dispute over matters unrelated or nonessential to the administration of a decedent's estate." *In re Est. of Lamb*, 584 N.W.2d 719, 723 (Iowa Ct. App. 1998).

One of the matters essential to the administration of a decedent's estate is the supervision of fiduciaries and the concomitant ability to provide relief for fiduciary misconduct. Iowa Code section 633.160, for instance, states that fiduciaries are liable for breaches of duty, including unreasonable delay in collecting from creditors, neglect in paying money or delivering property of the estate, embezzlement, self-dealing, and "any other negligent or willful act or nonfeasance in the fiduciary's administration of the estate by which loss to the estate arises." Meanwhile, section 633.162 of the Code allows the probate court to "take into consideration any violation of [the] probate code by [a] fiduciary" and "diminish the fee of such fiduciary to the extent the court may determine to be proper."

Our precedents in this area demonstrate that matters arising out of or related to probate should be resolved in the first instance in probate court. *Youngblut v. Youngblut*, 945 N.W.2d 25 (Iowa 2020), involved a disappointed heir who did not contest a will in probate court. Instead, the disappointed heir filed

a separate suit for tortious interference with an inheritance. *Id.* at 28–29. We held the disappointed heir's tort claim should have been "joined with a timely will contest" rather than being pursued as a separate action outside the probate court. *Id.* at 37–38. We explained that "probate is meant to provide a prompt, efficient, centralized way of resolving issues relating to a decedent's estate and getting the estate distributed." *Id.* at 35. There was "no reason" that the claim could not be joined with the ongoing probate proceeding, and "[e]fficiency favor[ed] this outcome." *Id.* at 35–36. Furthermore, the legislature's scheme for resolving will contests provided a remedy for disappointed heirs to make claims for tortious interference within the estate proceeding. *See id.* at 37. Allowing a separate action outside the probate court ran counter to this scheme. *See id.*

In *Lewis v. Lewis* we held that a claim against the administrator of an estate alleging neglect in the discharge of the administrator's duties should have been brought in the probate proceeding rather than in as a separate action. 166 N.W. 107, 111 (Iowa 1918). The plaintiffs in *Lewis*, heirs of an intestate, contended that one of the other heirs was indebted to the estate and argued the administrator had not sufficiently attempted to account for or collect on the debt. *Id.* at 107–08. The plaintiffs filed suit to compel an accounting and recovery of the debt by the administrator while the probate proceeding was still ongoing. *Id.* at 108. The plaintiffs had also lodged an objection to the administrator's final report in the probate proceeding. *Id.* at 111. We stated:

> If [the plaintiffs] are not satisfied with the administrator's accounting, or if they claim that by mistake or neglect or fraud he had failed to collect or administer upon any part of the estate, they

may, as we have already suggested, find prompt, if not summary, relief, by addressing the court in the probate proceedings and making proof of the facts upon which they ground their objections and complaints. In this case they did in fact appear and file their objections to the administrator's report, and no valid reason is shown, or can be suggested, why the court could not or ought not have proceeded thereon to hear and determine the same; this being the matter of the estate a final settlement in which the rights of every heir and party in interest could have been fully adjudged and protected.

*Id.* Given the availability of a remedy in the probate proceeding and the preference in the Probate Code for resolution of such claims in probate court, there was no basis to allow the separate action against the administrator. *See id.*

The facts of this case are analogous to *Manning v. Amerman*, 582 N.W.2d 539 (Mich. Ct. App. 1998) (per curiam). The plaintiffs in that case were beneficiaries of a trust who sued the trustee and the trustee's attorney. *Id.* at 540. The plaintiffs alleged the trustee, aided by his attorney, "breached his fiduciary duty as trustee, used the trust assets for his own purposes, and eviscerated the trust of its value." *Id.* The plaintiffs alleged negligent and intentional infliction of emotional distress, tortious interference with a trust relationship, and legal malpractice. *Id.* The plaintiffs brought their suit under the trial court's general jurisdiction. *Id.* at 540 & n.1. The court held the claims were within the exclusive jurisdiction of the probate court. *Id.* at 541. According to the court, the plaintiffs' emotional distress damages were allegedly caused by the "defendants' [willful] breaches of duty in the administration of the trust" and their "negligent acts and omissions with respect to the same conduct." *Id.* "Accordingly, it is clear from the face of the complaint that plaintiffs' emotional

distress . . . claims arose in the administration of a trust." *Id.* The claims were therefore properly confined to the jurisdiction of the probate court and could not be pursued in a separate law action. *Id.*

The rationales of *Youngblut, Lewis,* and *Manning* apply with the same force to Todd's claims. Todd's claims against Security National arise out of and relate to Security National's service as a fiduciary in the probate estate. The Probate Code sets forth the duties of fiduciaries and provides a scheme for relief. A fiduciary is liable for self-dealing and "for any other negligent or willful act or nonfeasance in the fiduciary's administration of the estate by which loss to the estate arises." Iowa Code §§ 633.155, .160. The probate court may consider any such breach and diminish the fee of the personal representative "to the extent the court may determine to be proper." *Id.* § 633.162. As in *Youngblut* and *Lewis,* this legislative scheme shows that claims related to the conduct of fiduciaries should be litigated within the probate proceeding. The contrary conclusion would materially interfere with the "prompt, efficient, centralized way of resolving issues relating to a decedent's estate." *Youngblut,* 945 N.W.2d at 35. Todd was required to resolve his claims in the probate proceeding.

Todd's suit against Security National demonstrates the practical problems with bifurcating claims involving the personal representative. Roger's will nominated Security National as the personal representative of his estate. A testator "has the right to appointment of the executor of his or her preference if the nominated executor is qualified to serve." *In re Est. of Petersen,* 570 N.W.2d 463, 467 (Iowa Ct. App. 1997). When appointing a personal representative, the

probate court must give first preference to "[t]he person designated in the will." Iowa Code § 633.294(1). A personal representative may only be removed after a showing that the personal representative does not qualify for the role or there is some basis for removing the personal representative. *See Est. of Peterson*, 570 N.W.2d at 467; *Est. of Randeris*, 523 N.W.2d at 605–06; *see also In re Schneider's Est.*, 277 N.W. 567, 570 (Iowa 1938) ("There is, or at least ought to be, no question that the executor appointed by the testator, in the absence of disqualification, should be commissioned by the court." (quoting *In re Miller's Est.*, 61 N.W. 229, 230 (Iowa 1894))). Todd contends that if he had been properly notified of the law regarding fees, then he could have searched for a personal representative with a more competitive fee structure, then he could have moved to replace the personal representative, then the probate court may have approved a different personal representative, and then Todd might not have had to expend money litigating Security National's fee application. Todd's claims in this case would require a jury to speculate about what may have happened in the probate proceeding if Todd would have raised these issues in that proceeding. We reject that approach and conclude claims arising out of and related to the personal representative's fees for administering an estate should be asserted in the probate proceeding and not in a separate suit after the fact.

An additional consideration supports the conclusion that Todd cannot maintain this separate suit against Security National. In *Youngblut*, the disappointed heir forewent any will contest in probate and filed a separate suit. 945 N.W.2d at 28–29. Here, Todd actually raised these issues in the probate

proceeding and obtained relief in the form of reduced fees charged to the estate. Todd's claims in this case are simply reassertions of the claims he already asserted in the probate court. To the extent that Todd contends he is entitled to additional relief, he should have sought additional relief in the probate proceeding. *See* Iowa Code § 633.162; *cf. Villarreal v. United Fire & Cas. Co.,* 873 N.W.2d 714, 729 (Iowa 2016) (stating claim preclusion bars litigation in a later proceeding of a claim that could have been raised in an earlier action).

## IV.

We hold that Todd's claims against the personal representative of his father's estate arising out of and in the course of the administration of the estate should have been brought before the probate court in the estate proceeding and cannot now be pursued. The district court properly granted Security National's motion for summary judgment on all claims.

**AFFIRMED.**

All justices concur except McDermott, J., who takes no part.