D. DAVENPORT, Executor, Appellee, v. LUCY SANDEMAN, Appellant.

**EXECUTORS AND ADMINISTRATORS:** Executors De Son Tort—
1  **Liability.**  A legatee of a strictly personal-property, debt-free estate, who, with the approval of all other legatees, distributes the entire estate in strict accord with the will of the testator, is thereafter under no obligation to account to a subsequently appointed executor who does not question the correctness of her distribution. Especially is this true when such legatee offers to pay the cost of such unnecessary administration.

**WILLS:** Construction—Precatory Words.  The provision of a will to
2  the effect that. the executor shall "see" that a named legacy is invested in a home for the legatee at a named place creates no trust, and must be deemed precatory only.  (See Book of Anno., Vol. I, Sec. 11846, Anno. 283 *et seq.*)

Headnote 1:   24 C. J. p. 1216 (Anno.)   Headnote 2:   40 Cyc. p. 1738.

Headnote 2:   28 R. C. L. 243.

*Appeal from Union District Court.*—A. R. MAXWELL, Judge.

NOVEMBER 22, 1927.

Action by plaintiff, as executor of the estate of John Frederick, deceased, for an accounting from the defendant, as an executrix *de son tort*. The equities were found with the plaintiff. From the decree entered the defendant appeals.—*Reversed.*

*R. Brown,* for appellant.

*Kenneth H. Davenport,* for appellee.

DE GRAFF, J.—Plaintiff-appellee is the duly qualified and acting executor of the estate of one John Frederick, deceased. The defendant-appellant classifies as an executrix *de son tort* under the common law and also under the statute. 11 Ruling Case Law 456, Section 562; Section 12059, Code of 1924.

This action was commenced in equity and is in the nature of an accounting. It is apparent that the trial court turned the case on the technical legal right of the plaintiff to the possession of the property of the estate of the testator, John Frederick. As a naked legal principle, this proposition may be conceded, but under the facts presently recited, it is not a controlling proposition. The facts are not in dispute.

It appears that the testator, John Frederick, at the time of his death, January 30, 1925, was 93 years of age. During the last 18 years of his life he was blind, and was cared for by his daughter, Lucy Sandeman, defendant, in her own home, and during this period she had supervised and transacted his business affairs. His estate had been converted into moneys and credits during his life, and aggregated the sum of $8,250 at the time of his death. In February, 1924, Lucy bought a farm, at a price slightly in excess of $10,000, and in making payment for the same, she used $6,800 of her father's money, with his consent and approval. In 1909 the will in question was executed, and D. Davenport was named therein as executor. This will was duly admitted to probate, and D. Davenport was appointed thereunder. Subsequently to the filing of the will for probate (February 5, 1925), and prior to the order of probate (May 5, 1925), the beneficiaries named in the will filed a petition,

1. EXECUTORS AND ADMINISTRATORS: executors *de son tort*: liability.

alleging that the estate of the deceased consisted wholly of personal property, and that, by mutual agreement, the estate had been fully settled; that each of the legatees had received the amounts named in the will; that there are no debts owed by the estate, and no necessity for the appointment of an executor; and that, if one is appointed, he should take only that portion of the estate sufficient to meet any claims, if any, which should be filed and allowed against the estate. This petition on hearing was dismissed by the court, and the executor named in the will was appointed, without any limitation upon his statutory authority.

It further appears that, in March, 1925, the legatees filed in the probate cause receipts for their respective legacies, and also disclaimers. Subsequent to the qualification of the executor, the defendant, Lucy Sandeman, was ordered to respond to notice in a proceeding for the discovery of assets; and upon the hearing, the court held that there was not sufficient evidence to justify an order on defendant to deliver to the executor any specific property of the estate, but reserved to the executor the right to commence an action for the recovery of any such property, or for an accounting. The instant action was the result.

The will bequeathed nine legacies of $500 each, and two legacies of $1,200 each, respectively, to Lucy Sandeman and Charles Frederick, her brother. The residue of the estate was bequeathed in equal parts to Lucy and her brother Frank.

One item of the will stressed by appellee involves the bequest to the son Charles Frederick. It reads as follows:

"To my son, Charles Frederick (to be invested in a home in Orient, Iowa) twelve hundred ($1,200) dollars."

The clause of the will nominating the executor provided:

"* * * and I hereby authorize him to convert all my estate into money as soon after my death as practicable, and—first to pay the indebtedness of my estate and the expenses of administration; second, to pay the bequests set forth in Article two of this will and to see that the bequest to Charles Frederick is invested in a home at Orient, Iowa."

At a conference of the beneficiaries immediately following the funeral of the testator, Lucy agreed with the beneficiaries to pay all the legacies in full. She performed her promise, and she also paid the funeral expenses, amounting to $700, and at all

times has offered to pay the cost of administration in full. She asserts and testified that there are no debts. No claims were ever filed against the estate, although, at the date of the trial (April 28, 1926), one year had not fully expired since the appointment of the executor.

Lucy Sandeman has made full disclosure of all assets that came into her possession, and there is no claim on the part of the plaintiff to the contrary. It cannot be questioned that she has accounted for the assets at all times in utmost good faith. No one has suffered any injury by reason of what has been done by her. The effect of the ruling of the trial court is that the executor had absolute right to the possession of this property, regardless of the pecuniary interests or agreements of the beneficiaries, and it results in compelling Lucy Sandeman to turn over the assets of the estate to the executor, unless the executor and Lucy Sandeman can agree otherwise, and in the event that they cannot agree, the court will decide the dispute.

We discover no legal reason for a postponement of this decision. She has fully accounted. Why should the decree say to the litigants, "Agree, if you can, and if you cannot, come back to me?" We discover no legal reason why these beneficiaries cannot settle between themselves their beneficial interests in the estate. The executor named has neither interest nor duty requiring him to go through the idle and expensive formality of collecting the full amount of the estate from Lucy, in order to distribute it to the very parties who have already received and receipted for it, and then turn over the balance to her (Lucy), as residuary legatee and sole owner of the residue. This procedure would not only be expensive, but it would be oppressive. It would necessitate a forced sale of the farm, in order to obtain the $6,800 which she used in its purchase with the consent of her father, the testator. It is plain that, after turning these funds over to the executor, she would be entitled to the return thereof in the settlement of the estate.

We may now revert to one of the primary claims of the plaintiff, that the will created a trust, in so far as the bequest (heretofore recited) to the son Charles Frederick is concerned.

2. WILLS: construction: precatory words.

If we assume the affirmative on this question of trust, then the utmost for which Lucy should be liable is the sum of $1,200,—but did the testa-

tor create a trust? The bequest was made directly to Charles. It is obvious that, if Charles had invested this money in a home at Orient, Iowa, there was no restraint on alienation. There is no suggestion that the title should be taken in the name of another, or that the home should be controlled by another. The title should be in him, with no restrictions as to its alienation. The executor was not authorized to take title in his name, in a representative or fiduciary capacity. Although Charles lived at Orient at the time the will was executed, he moved away, many years before the date of probating the will, and was not desirous of resuming his home at that place. We view this provision of the will as entirely precatory, and that the testator did not otherwise intend. Charles was under no disability, and by paying him the money direct, as Lucy did, no wrong was inflicted upon anybody, especially so where all legacies and all debts had been paid and all costs of administration tendered. We may concede that the defendant, Lucy Sandeman, did what she did without technical legal authority; but no one was injured in any respect, and the acts which she did do could be ratified by the court, and should have been ratified in the first instance.

We recognize the limitation that the beneficiaries of a will cannot destroy a trust. *Farwell v. Carpenter,* 161 Iowa 257. We recognize the limitation that a widow and the heirs cannot divide estate property among themselves without taking into account the creditors of the estate. *Madison v. Shockley,* 41 Iowa 451. Nor do we overlook the fact that the executor has rights and duties defined and prescribed by statute. Nevertheless, he is but an officer of the court, and an aid to the court in the proper settlement of the estate. He exists by virtue of the appointment by the court, and not by virtue of his nomination in the will. The court may disregard the nomination if the best interests of the estate so require. Under the provisions of the will in question, Lucy Sandeman and her co-legatees are the owners of the estate, and that ownership was subject only to the superior rights of creditors and the expense of administration. *In re Estate of Wells,* 142 Iowa 255.

Lucy Sandeman was the trusted agent of her father during his lifetime. She was the lawful custodian of the property for a period of three months after his death, and before an administrator was appointed. It was during this interim that she

acted to the full satisfaction of every owner of the estate. She justified her actions later by an accounting that has not been impeached.

The beneficiaries of a will can, by agreement, renounce the will and permit the entire estate to pass by the law of descent. *In re Estate of Stone*, 132 Iowa 136. In *Douglas v. Albrecht*, 130 Iowa 132, it is held that the beneficiaries of an estate which was not indebted could agree to a settlement and distribution among themselves, and that an administrator subsequently appointed could not recover the property from the distributees. See, also, *Christe v. Chicago, R. I. & P. R. Co.*, 104 Iowa 707; *Molendorp v. First Nat. Bank*, 183 Iowa 174; 23 Corpus Juris 1194.

The appellee argues that all that is asked of the defendant is an accounting; that she must account; and that, when she makes an accounting, she will be allowed all proper credits, etc. If we accept this proposition, for the moment, as a correct interpretation of the issues and of the decree entered, the answer is, the defendant has accounted, not only once, but several times. No item of her accounting has been challenged. Upon the commencement of this suit, she answered with a complete accounting. Upon the trial of this cause, she testified to a complete accounting. It stands unchallenged. The picture presented by Lucy is a picture of fidelity, not only to her father, but to her colegatees. Many a daughter would have filed a claim against the father's estate for the long years of service performed by her on his behalf; but she has claimed nothing, and, in fact, has added interest to the principal sum which she managed for her father, and for both principal and interest she has charged herself.

The decree entered calls for an accounting, provided that the executor and Lucy cannot agree as to the credits that should be allowed her. There was no reason for the trial-court to hesitate in this matter. The intimation and the implication are that, when she makes her accounting again, the executor will probably allow her credits for the legacies which she has paid to others, and perhaps for the amount which she herself claims, and to which she is entitled. The primary objective of the plaintiff-executor is the recovery of the possession of the property. This, as pointed out, would necessitate the sale of the farm. She has

already mortgaged it, for the purpose of obtaining the money to pay the legacies named in the will. It is obvious that the proposed course of the executor would be financially ruinous to the defendant, and would also involve the estate in costs which would not be to the interest of anyone.

We reach the conclusion that the court should have accepted the tender of the defendant to pay the costs of administration, and that, with the payment of such costs, the agreement entered into among the beneficiaries should have been ratified, and the estate closed. The petition of plaintiff should have been dismissed, upon the performance of the tender of the defendant to pay the costs of administration. It is ordered that a decree shall be entered in conformity to the conclusions announced herein. Wherefore, the decree entered is—*Reversed.*

EVANS, C. J., and ALBERT, MORLING, and WAGNER, JJ., concur.