## KEOWN v. UNITED STATES.
### No. 14319.

United States Court of Appeals
Eighth Circuit.
Sept. 13, 1951.

James M. Stewart and Stephen Robinson, Des Moines, Iowa, for appellant.

William R. Sheridan, Asst. U. S. Atty., Keokuk, Iowa (William R. Hart, U. S. Atty. and Cloid I. Level, Asst. U. S. Atty., Des Moines, Iowa, on the brief), for appellee.

Before WOODROUGH, THOMAS and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

The executrix of the estate of a deceased soldier (who was also his mother and his

sole testamentary beneficiary) sued to recover from the United States the arrears of pay due him at the time of his death in the amount of $1374.62. The United States had previously made payment of the arrears to his widow, from whom he was personally estranged but not legally separated. The trial court entered a judgment of dismissal, and the executrix has appealed.

The question here is whether the payment made to the widow had effected a legal discharge of the Government's debt, under the provisions of 10 U.S.C.A. § 868, as amended. That section, in its material portion, provides: "In the settlement of the accounts of deceased officers or enlisted persons of the Army, where no demand is presented by a duly appointed legal representative of the estate, the accounting officers may allow the amount found due to the decedent's widow, widower, or legal heirs in the following order of precedence: First, to the widow or widower; second, * * *;" etc.

The decedent's will was duly admitted to probate in the courts of Iowa, of which State he was a resident, and his mother was appointed by the court as executrix, in accordance with the designation of the will. She regularly qualified as such representative, and letters testamentary were issued to her. But all of this occurred after the United States had made payment to the widow. The proceedings for probate of the will, however, were pending at the time of the payment, and notice had been given by letter to the General Accounting Office of the institution of such proceedings and of the fact that the mother was named in the instrument as executrix and intended to qualify as soon as she was legally entitled to do so. Request also was made in the letter that the money not be paid out to anyone until the executrix had been "officially appointed."

The trial court found that the officer who had made the payment to the widow did not personally have knowledge of the receiving in the office of such notice on behalf of the mother or of the fact that proceedings for probate of the will were pending and that the mother intended upon her appointment

by the court and her qualification as executrix to present a demand as legal representative of the estate, but the court further declared that, even if this had not been the situation, the payment made to the widow would in any event have effected a legal discharge of the Government's debt.

It was the court's view that the language of the statute gave the General Accounting Office the absolute right at any time, after auditing and arriving at the amount due on a decedent's account, to make payment thereof to his widow (or to the other members of his family on the basis of the precedence specified therein), unless, before such payment was actually made, there had been presented a demand therefor by "a duly appointed legal representative of the estate"; that in the present situation no duly appointed legal representative of the estate had or could be claimed to have existed, within the purview and purposes of the statute involved, until after the will had been admitted to probate, the mother's nomination in the will as executrix had been approved by the court, and she had made the necessary official qualification; that the notice and request theretofore sent to the General Accounting Office and received by it prior to the making of payment to the widow had thus not constituted a demand by a duly appointed legal representative of the estate; and that the payment therefore had been one which the statute authorized the General Accounting Office to make and which accordingly operated to discharge the Government's debt.

We cannot say that this reading and application of the statute were erroneous. Manifestly, the statute was designed to make possible the payment of a deceased officer's or enlisted man's arrears of pay to the members of his family, on the basis of their specified precedence, without the necessity of state administration or probate proceedings. And the purpose of the statute in this respect was not simply to "spare the heirs * * * the expenses of legal administration" but as well to "avoid hardship to the families of deceased personnel in cases where they may be in need of ready money". See Senate Report No. 839,

May 2, 1944, Senate Committee on Military Affairs, 78th Cong., U.S. Code Congressional Service 1944, p. 1323. Thus, without regard to whether state administration or probate proceedings might be necessary of such a decedent's estate in other respects or for other purposes, Congress intended "to facilitate the settlement of that part of his estate represented by arrears of pay due from the United States." Ibid.

The statute therefore constituted a policy and a scheme for making settlement of the Government's indebtedness for arrears of pay in situations of death in enlisted military service. In establishing this statutory settlement policy and scheme, Congress, as it had a right to do, did not see fit to require a wait or a dependence of any nature on state proceedings. No lapse of time was prescribed before payment was entitled to be made, and no other restriction was imposed upon the General Accounting Office in the making of such a settlement on the basis of the precedence set out in the statute.

■ It is perhaps not without significance in relation to the contention made here by the executrix, that the statute made the capacity of the designated beneficiaries to receive wholly a matter of existing status at the time settlement or payment was actually made by the General Accounting Office. Thus the statute contained a provision —not set out in the portion quoted above— that "if there be no widow, widower, child, father, or mother *at the date of setlement,* then", etc. (Emphasis supplied.) There further was a provision to the effect that the authority granted to make payment to the beneficiaries prescribed was not to be construed as preventing the General Accounting Office from making payment of funeral expenses, *"provided a claim therefor is presented by the person or persons who actually paid the same before settlement by the accounting officers."* (Emphasis supplied.)

The trial court viewed the right or capacity of the decedent's estate to receive payment as resting upon the same narrow basis of existing status in the estate's representative at the time the money was paid as the statute imposed in relation to any of the other beneficiaries named in it.

■■ Under the language of the statute, there can be no question that, if there did not exist at the time the money was paid out "a duly appointed legal representative of the estate" having capacity to demand and receive the money as such, and having made such a demand, the General Accounting Office was given no authority to make payment for the estate's benefit, any more than it would have had to make payment on the basis of the rights of a widow, child, father, etc., who was not alive "at the date of settlement". And it is absolutely clear that under Iowa law the mother did not and could not occupy the status of "a duly appointed legal representative of the estate" until after the will had been admitted to probate, the court had made appointment of her as executrix, in recognition or acceptance of the nomination contained in the will, and she had made the necessary qualification by oath, etc. See Davenport v. Sandeman, 204 Iowa 927, 216 N.W. 55, 58; In re Schneider's Estate, 224 Iowa 598, 277 N.W. 567, 569; Code of Iowa 1946, §§ 633.43, 633.45, I.C.A.

■ The executrix argues that the doctrine of relation back of letters testamentary or of administration should be applied to her right to receive the money, as is generally done to bridge the hiatus between the death of the owner of property and the orderly appointment of a legal representative to care for and distribute such property, where prejudice otherwise would result to the estate. See 21 Am.Jur., Executors and Administrators, § 211, p. 490; Humphreys v. Humphreys, 3 P. Williams 349, 24 Eng. Rep. 1096; Doolittle v. Lewis, 7 Johns Ch., N.Y., 45, 11 Am.Dec. 389; Leahy v. Haworth, 8 Cir., 141 F. 850, 855, 4 L.R.A.,N.S., 657. But the difficulty in the present situation with this argument is that the funds involved did not constitute a part of the decedent's estate for purposes of administration, except as Congress had allowed

them to become such. And Congress did not allow them to become part of the decedent's administrable estate from the fact of his death but only from the fact that a duly appointed legal representative existed and had made demand, before the money had been otherwise paid out. Thus, there could not be said to be, prior to the appointment of an actual legal representative and a demand by him, any existing estate right which was subject to being prejudiced by the acts of the General Accounting Office. To hold that the General Accounting Office's hands should be tied by a notice of an intention to create a right under the statute would be to read into congressional language and purpose a limitation and a caveat which can not be found therein. And such a construction of the statute could also be frustrative of the clear object of Congress to make it possible for the General Accounting Office to relieve without delay an acute financial distress on the part of the widow or other entitled family member.

It is true that the record shows that as a matter of policy and practice the General Accounting Office has ordinarily withheld payment to family members, where notice of the pendency of probate or administration proceedings has been given it. In this respect, the slip-up in the office as to the receipt of the notice may sympathetically be viewed as having been perhaps unfortunate in the present situation. But it must be remembered that this viewpoint is simply one of human and not of legal consideration. The General Accounting Office can not be said to have been legally required to follow such a policy and practice, and presumably it would not do so in a situation of acute financial distress. In any event, we think that the trial court was entitled to hold that under the statute the General Accounting Office was not without authority to make the payment which it did, and that the liability of the United States for the decedent's arrears of pay was therefore legally discharged.

It follows that the judgment must be affirmed.