Dorothy Mae HOWELL, Individually, and
as Executrix of the Estate of Martin
Frederick Howell, Jr., Deceased,

v.

UNITED STATES.

No. 471–56.

United States Court of Claims.
March 5, 1958.

Philip M. Fairbanks, Washington, D. C., for plaintiff. Fairbanks, Stafford & Fairbanks, Washington, D. C., and T. Paine Kelly, Jr., Tampa, Fla., were on the briefs.

Frances L. Nunn, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

Denis K. Lane, Washington, D. C., for third-party defendant.

JONES, Chief Judge.

Plaintiff sues as executrix and sole beneficiary under the will of a deceased Air Force officer to recover pay and allowances that accrued to his account under the Missing Persons Act of 1942.[1] The sole issue is whether payment of this sum to the natural mother of the deceased officer prior to the time plaintiff qualified as executrix under his will discharged defendant's obligation with respect thereto under the Act of June 30, 1906, 34 Stat. 750, as amended, 58 Stat. 795 (1944), 60 Stat. 30 (1946), 10 U.S.C. § 868.[*]

On April 27, 1951, First Lieutenant Martin Frederick Howell, Jr., was reported by the Department of the Air Force as missing in action. The officer's stepmother is the plaintiff herein. On September 2, 1953, the Department of the Air Force received from plaintiff a copy of Lt. Howell's last will and testament which denominated her as executrix and sole beneficiary of the estate. At that time the will had not been probated since Lt. Howell was still being carried on the rolls in a "missing" status.

On January 31, 1954, Lt. Howell was officially declared dead. He was survived by the plaintiff and by his natural mother, Mrs. George T. Belew, who is a third party defendant in this action.[2] From April 27, 1951, to January 31, 1954, pay and allowances accrued to Lt. Howell's credit under the provisions of the Missing Persons Act of 1942, supra, in the total amount of $12,329.36. It is this sum which is here in controversy.

Two days after Lt. Howell was officially declared dead a form to make claim for the arrears in pay due the deceased officer was forwarded to Mrs. Belew as the natural mother and next of kin. The form was prepared and submitted by Mrs. Belew and, on March 2, 1954, her claim was approved by the Comptroller General. By check dated March 10, 1954, the full amount of the arrears due was paid to Mrs. Belew as next of kin pursuant to 10 U.S.C. § 868, supra.

Meanwhile, however, claims had also been submitted for the arrears in pay by the plaintiff on February 11 and March 3, 1954. These claims were submitted by the plaintiff as stepmother, rather than as the duly appointed legal representative of the estate under Lt. Howell's will. By letter dated February 24, 1954 (six days prior to the approval of Mrs. Belew's claim and fourteen days prior to the payment thereof), plaintiff was informed by the Air Force Finance Center, Denver, Colorado (which was in possession of the will forwarded by plaintiff in September 1953), that it would be necessary for her to furnish a copy of a court order appointing her as executrix before she could qualify to receive the payments due.

Plaintiff proceeded to probate the will and on April 7, 1954, she was duly qualified and appointed executrix of the estate by the County Judges Court of Pinellas County, Florida. A copy of her qualification was promptly forwarded to the Air Force Center in Denver. By letter dated April 14, 1954, plaintiff was informed of

---

1. 56 Stat. 143, 144, as amended 58 Stat. 679 (1944), 50 U.S.C.A.Appendix, § 1002.

* Now 37 U.S.C.A. § 361 et seq.

2. Mrs. Belew and Lt. Howell's father were divorced in 1938 when the decedent was 11 years old. Sole custody of the children was awarded to the father and decedent was raised from that time by the father and stepmother.

the March 10 "erroneous" payment to Mrs. Belew. Defendant has since considered its obligation discharged by the payment to the natural mother.

Plaintiff instituted this action to recover the amount of the claim on grounds that under 10 U.S.C. § 868 she is the sole owner of the claim for arrears in pay as the personal representative of the estate of the deceased officer, and that payment of the claim by defendant to Mrs. Belew did not affect defendant's obligation to her.

Defendant maintains that its payment to Mrs. Belew at a time when there was no demand for payment from any "duly appointed legal representative of the estate" discharged its obligation under section 868 and that plaintiff's remedy, if she has one, is against Mrs. Belew.[3]

In addition, defendant has filed a "Contingent Cross Claim" against Mrs. Belew in case this court should award plaintiff her claim, to which the third party defendant has filed an answer admitting payment, but denying liability. There being no genuine issue as to any material fact, both parties have moved for summary judgment and defendant has filed a contingent motion for summary judgment against the third party defendant.

Section 868 of Title 10 United States Code (1946 Ed.) (60 Stat. 30), which governed the disposition of the fund by defendant at the time in question, provides as follows:

"Hereafter in the settlement of the accounts of deceased officers or enlisted persons of the Army, where no demand is presented by a duly appointed legal representative of the estate, the accounting officers may allow the amount found due to the decedent's widow, widower, or legal heirs in the following order of precedence: * * * if no widow, widower, or descendants, then to the father and mother in equal parts; * * *."

The statute accords to the legal representative of the estate first preference to any payments made under the section. We think this preference was intended to provide for distribution of these payments according to any directions left by a deceased soldier in a testamentary instrument. It follows that if such intention is to be fulfilled, a reasonable opportunity must be afforded the representative of the deceased to qualify and make demand as required by the section before any payment to the heirs is made, else the primary preference given the representative could be rendered a nullity. The history of the section fully supports this position.

The original section 868, enacted in 1906 (34 Stat. 750), had provided that any amounts due a deceased member of the Army under the section could be paid *only* to the "duly appointed legal representative of the estate" except where the amount was less than $500, in which case the sum could be paid directly to the heirs, absent a demand by a legal representative for the lesser sum. It is clear that the primary purpose of this original section was to recognize that these debts owing to decedent constituted his property which should be disposed of, wherever possible, in accordance with his wishes (if he died testate) or according to the laws of distribution of the state of his domicile (in cases of intestacy). However, the statute recognized, as well, the hardship of requiring a representative to qualify in cases where the claim was small and where such a qualification would not ordinarily be contemplated.

In 1944, upon the recommendation of the War Department, section 868 was amended for the first time by permitting payments to be made of amounts up to $1,000 (instead of the previous $500 limitation) without requiring qualification of a legal representative, and providing further, in cases where the claim exceeded that amount, that payment of $1,000 could be made to the heirs, but in either

3. Plaintiff has instituted an action against Mrs. Belew in the Maryland State courts, which we were informed at oral argument is being held in abeyance pending decision in this case.

case, again, only where there had been no demand by a duly authorized legal representative of the estate. The amount of the claim in excess of $1,000 could still be obtained only by such a representative. 58 Stat. 795 (1944).

This amendment was felt necessary in view of increased military pay over the years and the possibility of large accumulations under the Missing Persons Act of 1942, it having been found that "many members of the Military Establishment *who died intestate* have balances of more than $500 to their credit." [Emphasis supplied.] S.Rpt. 839, May 2, 1944, U.S. Code Congressional Service, 78th Cong., 2d Sess., 1944, p. 1323. The amendment was designed, therefore, to alleviate an increasing burden of requiring persons to go through proceedings to qualify a representative where, but for the claim, none would have been needed or instituted.

In 1946, the section 868 here involved was enacted, eliminating entirely any limitation as to the amount of a claim which could be allowed without requiring qualification proceedings. The title of this amendment proclaimed its purpose to be to "permit settlement of accounts of deceased officers and enlisted men * * * without administration of estates." 60 Stat. 30 (1946). It is to be noted, however, that the primary preference for these claims was left by the Congress in the legal representative of the estate. We think this last amendment was designed solely to relieve the burden of qualifying a representative, no matter what the amount of the claim, where such qualification would serve no useful purpose—primarily in cases of intestacy.

Defendant relies upon Keown v. United States, 8 Cir., 1951, 191 F.2d 438, to support its position that the 1946 amendment to section 868

"* * * gave the General Accounting Office *the absolute right at any time*, after auditing and arriving at the amount due on a decedent's account, to make payment thereof to his widow (or to the other members of his family on the basis of the precedence specified therein), unless, *before such payment was actually made*, there had been presented a demand therefor by 'a duly appointed legal representative of the estate'; * * *." [Emphasis supplied.] (191 F.2d at page 440)

The Keown case denied recovery to the plaintiff on facts in all material respects similar to those at bar. The case is founded upon the assumption that the sole intent Congress had in enacting the 1946 amendment was to provide an easy administrative rule-of-thumb whereby defendant might discharge its obligation by payment at any time without regard to whether the decedent had died testate or intestate, or whether probate of his estate was contemplated or not.

We cannot agree, however, that the 1946 amendment was enacted for such purpose. Rather, we think it manifest from the history of the section that Congress intended primarily to respect and give effect to the wishes of the decedent with regard to the disposition of these claims if he had expressed any through a testamentary instrument. The 1946 amendment merely recognized that, *absent such an expression by the decedent*, it was an unnecessary burden both upon the heirs and the Government to make a slavish requirement that a representative of the estate qualify no matter what might be the amount of the claim involved. In other words, it relieved the burden of delay and expense attendant upon probate proceedings in cases of intestacy, but it did not destroy Congressional preference that the claim be distributed as the deceased had directed. As was pointed out by a California court construing an exactly similar provision applicable to members of the Navy and Marine Corps, 35 Stat. 373, (1908), as amended, 52 Stat. 352 (1938), 57 Stat.

583 (1943), 60 Stat. 30 (1946), 34 U.S. C. § 941a †:

"The obvious purpose of the statute is to settle and dispose of amounts due deceased members of the armed forces where no probate is contemplated to the end that any balances remaining to the credit of any such deceased member may be distributed to the heirs entitled to succeed thereto under the laws of descent and distribution. The statute recognizes the primary right of a legal representative of the estate to demand and receive the amount due and does not require that any such amount be allowed to anyone except a legal representative." In re Kevil's Estate, 1950, 98 Cal.App.2d 388, 220 P.2d 555, 557.

The difficulty with the analysis of the Keown case and the position of the defendant before this court is in the total failure to recognize or give any effect to an obvious primary right to payment from the Government which Congress placed in the personal representative of the deceased. If that analysis and position were correct, payment could be made by defendant the day after the soldier died and his lawful estate (which could not possibly have qualified or made its demand) would be left to recover the sum, as best it could, from the heirs. Of course, we agree that plaintiff probably has a remedy in the State courts. See In re Kevil's Estate, supra, and Scamman v. Scamman, Ohio Com.Pl.1950, 90 N.E. 2d 617. But we cannot agree that the State remedy, at least in the circumstances of plaintiff's case, is her sole remedy. In many instances, for obvious reasons, such a remedy would not be adequate.

We cannot conceive that Congress would have intended to accord the personal representative the primary right to the claim and, at the same time, authorize the General Accounting Office to take the claim at any time, throw it in the air, and leave the claimants to scramble for it in the State courts. Rather, we think that, under the law, defendant was bound to afford plaintiff a reasonable opportunity to qualify for the claim in order to effect the intent of Congress that, where possible, this fund be distributed as the deceased soldier wished. We can see no reason for unseemly haste, especially where, as here, the defendant had full knowledge of the pendency of the probate proceedings and the opposite wishes of decedent.

In fact the affidavit of the Acting Adjutant General of the Air Force reveals (1) that the deceased had designated the plaintiff as his primary beneficiary on February 9, 1951, that this was shown in the officer's record; (2) that on September 2, 1953, notice of the death of the officer's father and a copy of the last will and testament of the officer was received by the Department of the Air Force; and (3) that the claim of plaintiff was filed with the department (though not as a duly appointed executrix) several days before the erroneous payment.

On February 1, 1954, the Director of Military Personnel of the Air Force in Washington wrote plaintiff a letter advising her that under the Missing Persons Act the missing status of the officer was terminated and he was officially presumed to be dead. The letter further stated that "Within a short time a Personal Affairs Officer from an Air Force installation will communicate with you. This officer is prepared to assist you in obtaining government benefits allowable as the result of the death of your loved one and will help in any other way that he can."

Thus, there is no doubt the officials in Washington had full knowledge of the rights of plaintiff long before payment was made. In fact, they had an actual copy of the will at the Air Force headquarters in Washington more than six months before the erroneous payment was made. In spite of this fact someone

† Now 37 U.S.C.A. § 361 et seq.

either "slipped a cog", or chose to disregard the wishes of the deceased officer and the clearly expressed rights of plaintiff, the written record being crowded with adverse information.

It will serve the ends of justice to honor the clearly expressed wishes of a gallant officer who died in defense of his country, as those wishes are revealed in his last will and testament. We think this interpretation is in accord with the intention of the Congress as expressed in the act, especially when read in the light of the legislative history of the applicable provision.

In the instant case, defendant allowed the payment of this claim 30 days after the death of plaintiff's testator had been officially declared. Payment was made a short time after this declaration. Had defendant waited a few days longer, plaintiff would have qualified. If, in the extreme case, an early payment were felt necessary to relieve acute financial distress among the deceased's heirs, a simple inquiry would usually reveal the status of the estate. No such extreme situation is revealed here. Our conclusion, therefore, is that the March 10, 1954, payment to Mrs. Belew did not discharge defendant's obligation to make payment to the specifically designated beneficiary in accord with the expressed wishes of the deceased, especially since the defendant had full knowledge of the terms of the will at the time of the erroneous payment.

The plaintiff's motion for summary judgment is granted and the defendant's similar motion against the plaintiff is denied. Defendant's contingent motion for summary judgment against the third party defendant herein is granted.

The plaintiff is entitled to recover of and from the United States the sum of $12,329.36, and the United States is entitled to recover of and from Mrs. George T. Belew, third party defendant herein, the same amount, to wit, the sum of $12,329.36, and judgments will be entered to that effect.

It is so ordered.

LARAMORE, MADDEN and LITTLETON, Judges, concur.

WHITAKER, Judge, took no part in the consideration and decision of this case.