**Helen MINIAFEE, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 588–86C.**

United States Claims Court.

July 27, 1989.

William Radcliffe, Uniontown, Pa., for plaintiff.

Hillary Stern, with whom were Asst. Atty. Gen. Richard K. Willard, David M. Cohen, Director, and Thomas W. Peterson, Asst. Director, for defendant.

OPINION

SMITH, Chief Judge.

This case presents the question of whether the Full Faith and Credit Clause (U.S. Const., art. IV, § 1) as codified at 28 U.S.C. § 1738 (1982) requires the court to give conclusive effect to a Pennsylvania decree naming Helen Miniafee executrix of deceased serviceman Gordon Redmond's alleged will. Pursuant to her status as executrix, plaintiff has filed a claim under 10 U.S.C. § 2771(a)(5) (1982) for $61,004.89 in cumulative military retirement pay due to Mr. Redmond's account. The case is before the court on the plaintiff's motion for summary judgment. For the reasons given below, the court is inclined to grant plaintiff's motion. However, as the plaintiff has not conclusively shown that Mr. Redmond owned property in Fayette County, Pennsylvania at the time of his death, the court reserves judgment until such time as that question is satisfactorily answered.

FACTS

Gordon L. Redmond, SP5, U.S. Army, died in 1982 in the Veteran's Administration Hospital in Buffalo, New York. He was predeceased by his wife, Leah Redmond, and died leaving no heirs. At the time of her death, Leah Redmond owned a house in Uniontown, Pennsylvania. Subsequent to her death, title to the house automatically passed, by operation of Pennsylvania law, to Gordon Redmond. In addition to supposed ownership of the house, Mr. Redmond had accumulated $61,004.89 in military retirement pay at the time of his death. Mr. Redmond's last will, allegedly executed jointly with his wife in 1967, named plaintiff as executrix and alternate beneficiary.

Following Mr. Redmond's death, plaintiff offered the will for probate in Fayette County, Pennsylvania. The Register of Wills of that county granted plaintiff letters testamentary. As a result, under Pennsylvania law, Helen Miniafee was then entitled to administer the estate.

After receipt of the letters testamentary, plaintiff's counsel notified the Veteran's Administration on March 8, 1982, that plaintiff had been named executrix and principal beneficiary under Gordon Redmond's will. Although Pennsylvania law would have given the United States standing to appeal the issuance of letters testamentary to the plaintiff, no appeal was filed.

The March 8, 1982, letter also contained plaintiff's claim under 10 U.S.C. § 2771(a)(5) against the United States Army for Mr. Redmond's accrued retirement pay. Section 2771(a)(5) provides that where the serviceman has not designated a beneficiary, and where there were no living heirs at the time of the serviceman's death, payment of any amount due the serviceman's account shall be made to the "legal representative" of the serviceman's estate. The claim was denied on December 5, 1985. Upon reconsideration, on June 24, 1986, the Comptroller General[1] again denied the claim, stating that Miniafee's status as legal representative of Mr. Redmond's estate was "too doubtful" to allow payment. The Comptroller General emphasized that the government believed Mr. Redmond to have been domiciled in New York at the time of his death. On September 22, 1986, the plaintiff initiated the present action in her capacity as legal representative of Mr. Redmond's estate, seeking Mr. Redmond's total accumulated retirement pay.

DISCUSSION

Congress in 10 U.S.C. § 2771 (1982) provided for the final settlement of accounts of deceased members of the armed forces. The statute states in pertinent part:

(a) In the settlement of the accounts of a deceased member of the armed forces who dies after December 31, 1955, an amount due from the armed forces of

---

1. Plaintiff's initial claim was made to the Veteran's Administration Hospital in Buffalo, N.Y. The claim was forwarded to the General Accounting Office because of its responsibility to pay claims under section 2771. The request for reconsideration was apparently made to the Comptroller General in his capacity as head of the General Accounting Office. *See*, 31 U.S.C. § 702 (1982).

which he was a member shall be paid to the person highest on the following list living on the date of death:

(1) [designated] Beneficiary....

(2) Surviving spouse.

(3) Children and their descendants, by representation.

(4) Father and mother....

(5) Legal representative.

(6) Person entitled under the law of the domicile of the deceased member.

10 U.S.C. §§ 2771(a)(1)–(6) (1982). As it is undisputed that there are no persons in categories (1) through (4), the court must focus solely upon the question of whether plaintiff qualifies as the legal representative of Mr. Redmond's estate for purposes of section 2771(a)(5). It has previously been recognized by the Court of Claims when construing a predecessor to section 2771 that "legal representative" refers to the legal representative of the deceased serviceman's estate as appointed by state law. *Howell v. United States,* 141 Ct.Cl. 699, 703, 159 F.Supp. 597, 599 (1958).

Plaintiff argues that since she was granted letters testamentary in a state probate proceeding, she should also be recognized as Mr. Redmond's duly appointed legal representative for purposes of section 2771. Her success on this motion for summary judgment is contingent upon a showing that the Register's issuance of letters testamentary is entitled to full faith and credit under 28 U.S.C. § 1738 (1982).

The full faith and credit statute when it applies "requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chemical Const. Corp.,* 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982). When deciding whether a state court judgment is entitled to full faith and credit the federal courts have traditionally examined the state proceeding to determine if it would be subject to collateral attack under the law of the rendering state. In addition, the federal courts have examined the underlying jurisdiction of the rendering court for defects. *Williams v. North Carolina,*

325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945); *Fehlhaber v. Fehlhaber,* 681 F.2d 1015, 1020 (5th Cir.1982). A determination that jurisdiction is lacking though may not void the state judgment as the rules of preclusion also apply to jurisdictional decisions of the rendering court. *Underwriters Nat'l Assurance Co. v. North Carolina Life & Accident & Health Ins. Guar. Assoc.,* 455 U.S. 691, 102 S.Ct. 1357, 71 L.Ed.2d 558 (1982).

The Supreme Court is moving away from the above traditional approach and towards a due process framework for full faith and credit analysis. *Kremer,* 456 U.S. at 479–85, 102 S.Ct. at 1896–1899; *Jones v. City of Alton, Ill.,* 757 F.2d 878 (7th Cir.1985); *Fehlhaber,* 681 F.2d at 1021 n. 6. Under this newer approach a state court decision satisfying the minimal requirements of due process should be given preclusive effect in the federal courts under section 1738. Conversely, of course, a decision not meeting the minimal requirements of constitutional due process would not receive full faith and credit.

Keeping these principles in mind the court must examine this case to determine initially whether Pennsylvania would give preclusive effect to the Register of Wills decision to issue letters testamentary to plaintiff. This manner of approach is necessary because, under either the traditional or the due process approach, full faith and credit cannot be founded upon a state decision subject to collateral attack in the state courts. *Fehlhaber,* 681 F.2d at 1020–21.

■ Under Pennsylvania law the probate of a will by the Register of Wills constitutes a judicial decree. *Mangold v. Neuman,* 371 Pa. 496, 501, 91 A.2d 904, 905 (1952). ("A register is a judge, and the admission of a will to probate a judicial decision ...") (quoting *Sebik's Estate,* 300 Pa. 45, 47, 150 A. 101, 102 (1930)). Pennsylvania law makes it clear that its judgments, including the granting of letters testamentary, when rendered by a court of proper jurisdiction over parties and subject matter, may not be attacked in any collateral action or proceeding. *Mangold,* 371 Pa. at 501, 91 A.2d at 906. In fact, when

jurisdiction is proper and all parties are provided notice the only method of attack is a direct appeal of the Register's decision to probate the will. *Id.*

■ It is clear here that the United States was provided notice on March 8, 1982, of the Register's decision to probate the will, and that the United States had standing to appeal the Register's decision. *Mackarus Estate,* 431 Pa. 585, 246 A.2d 661 (1968). Furthermore, due process is met by a full and fair opportunity to litigate a question regardless of whether the issue was actually litigated. *Juidice v. Vail,* 430 U.S. 327, 337, 97 S.Ct. 1211, 1218, 51 L.Ed.2d 376 (1977); *Sherrer v. Sherrer,* 334 U.S. 343, 351, 68 S.Ct. 1087, 1091, 92 L.Ed. 1429 (1948). The presence of a right to appeal, even if not taken advantage of, is sufficient due process for section 1738 to apply. *Kremer,* 456 U.S. at 485, 102 S.Ct. at 1899; *Juidice,* 430 U.S. at 337, 97 S.Ct. at 1218; *James v. Gerber Prod. Co.,* 587 F.2d 324 (6th Cir.1978).

■ Defendant has raised a question of whether the Register ever had jurisdiction. Under Pennsylvania law a "will may be probated before the register of any county where any of his property is located." 20 Pa.Cons.Stat.Ann. § 3131 (Purdon 1975). If Mr. Redmond had no property in Fayette County, Pennsylvania at the time of his death then the Register had no jurisdiction to issue the letters testamentary. *Estate of Grimani,* 20 Pa.D. & C.3d 557 (1981). The evidence on this issue is inconclusive. Plaintiff relies upon the terms of the joint will which provided for Leah Redmond's property to pass to Mr. Redmond. There is no evidence presented establishing that Mr. Redmond still owned the 41 Grant Street property at the time of his death. In fact, defendant points out that in her application for letters testamentary plaintiff indicated that Mr. Redmond was domiciled in Pennsylvania but did not own any real or personal property in Pennsylvania. This particular question is significant to the ultimate result in this litigation. As

discussed below, if plaintiff can show that Mr. Redmond owned property in Pennsylvania at the time of his death then the Register's decision is entitled to full faith and credit.

■ At this juncture it needs to be decided whether Pennsylvania law allows probate of a will on the basis of ownership of property even when the application for probation fails to indicate ownership of property in the county where the will was probated. Chapter 20, section 3153 of the Pennsylvania Consolidated Statutes Annotated provides a list of requirements for the petition for grant of letters testamentary. The list includes the requirement that the petition state so far as it is known:

> If the decedent was not domiciled in the Commonwealth at the time of his death, the estimated value of his personal property in the Commonwealth, the estimated value of his personal property in the county in which the petition is filed, and the estimated value and location of his real property in the Commonwealth.

20 Pa.Cons.Stat.Ann. § 3153(5) (Purdon 1975).

The defendant suggests, relying upon *Sharpless's Estate,* 20 Luz. 161, 28 Pa.D. 746 (1918), that the section above may be mandatory. However, the court's reading of *Sharpless's Estate* indicates only that the filing of a petition in accordance with Pa.Cons.Stat.Ann. § 3153 is mandatory. In other words without the filing of the petition the Register has no authority to issue the letters testamentary. *Sharpless's Estate* has no bearing upon an error in the contents of the petition. The court has found no other case casting light upon the problem. Therefore, while the Register may revoke the granting of letters for fraud, misrepresentation, or other failure to provide sufficient or accurate information on the petition, *Nearhoof Estate,* 8 D. & C.2d 199 (1956), a decision that the failure to properly state that Mr. Redmond owned property in the county defeats the jurisdiction of the Register is not warranted.[2] The fact, if it is a fact, that decedent

---

**2.** There is no indication in the record before the court that the Register has revoked the letters testamentary.

owned property in the county should be sufficient for jurisdiction to lodge in the Register even if the property is not listed on the application. The court concludes then that Pennsylvania would give preclusive effect to the unappealed judgment of the Register provided that decedent owned property in Fayette County, Pennsylvania at the time of his death.

■ This determination is also tied to the question of whether the Register had jurisdiction over the parties sufficient to invoke section 1738. While, as the court has noted, the question of property ownership has not been finally resolved, the defendant has had sufficient opportunity to protect its interests in this case. Jurisdictional issues are also subject to preclusive effect under the full faith and credit statute. *Underwriters*, 455 U.S. at 709 n. 16, 102 S.Ct. at 1368 n. 16. Therefore as long as defendant had a full and fair opportunity to litigate the validity of the letters, including jurisdictional aspects, the minimal protections of due process are not offended.

The defendant cannot argue that it lacked notice of the granting of the letters. On March 8, 1982, immediately following issuance of the letters, plaintiff's counsel notified the Veterans Administration of plaintiff's receipt of the letters and her intent to pursue a claim for the funds held in Mr. Redmond's account.

Despite having this notice, and standing to appeal, *Mackarus Estate*, 431 Pa. 585, 246 A.2d 661 (1968), defendant failed to pursue any course of action contesting the jurisdiction of the Register until undertaking this collateral attack upon plaintiff's status and upon the will. The proper approach under Pennsylvania law would have been a direct appeal pursuant to 20 Pa. Cons.Stat.Ann. § 908 (Purdon Supp.1989).

The Supreme Court has stated that "state proceedings need do no more than satisfy the minimum procedural requirements of the 14th Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law." *Kremer*, 456 U.S. at 481, 102 S.Ct. at 1897–98. The court in *Kremer* further noted that "no single model of procedural

fairness, let alone a particular form of procedure, is dictated by the Due Process Clause." *Id.* at 483, 102 S.Ct. at 1898. It has been stated earlier in this opinion that the presence of a right to appeal meets the required standards of due process. *James,* 587 F.2d at 328. Therefore, "the fact that [defendant] failed to avail [itself] of the full procedures provided by state law does not constitute a sign of their inadequacy." *Kremer,* 456 U.S. at 485, 102 S.Ct. at 1899. The court then holds that the requirements of due process have been met.

In opposition to plaintiff's motion the defendant argues that the will itself was invalid. Defendant notes that Mr. Redmond's signature on the June 15, 1967, will does not appear to be Mr. Redmond's. In addition, Mr. Redmond was allegedly declared mentally incompetent at the time the will was signed. Also, Veteran Administration records suggest that Mr. Redmond was receiving medication at the Buffalo, New York hospital on the date that the will was allegedly signed in Pennsylvania. Whatever the factual disputes surrounding the merits and validity of this will, the court is of the opinion that they are irrelevant to this proceeding. This is so because the operation of state law has already determined the will is proper in all respects. Under Pennsylvania law a probated will is presumed proper unless the probate is appealed from:

> That a register's decree admitting to probate a last will, unappealed from within the statutory period, becomes thereafter conclusive and exempt from collateral attack, is too well established to be gainsaid. Such probate is conclusive as to all questions and disputes touching the will as fall within the jurisdiction of the register, as for instance, questions of fraud in the procurement of the will, whether by undue influence, restraint, or duress of any kind. When a last will has been admitted to probate, the legal presumption at once arises that the will so probated is a last will, and is the free and voluntary expression of a testator, of sound and disposing mind and understanding, as to the disposition the testa-

tor desired to make of his property upon his death. Where the decree of the register is unappealed from within the period allowed for such appeal, the legal presumption becomes conclusive, and it makes an end to questions passed upon, or within the jurisdictional power of the register to consider, touching the validity of the will.

*Kiger's Estate,* 487 Pa. 143, 147, 409 A.2d 5, 7 (1979) (quoting *Bunce v. Galbrath,* 268 Pa. 389, 112 A. 143 (1920).

■ Defendant argues that the Pennsylvania judgment of probate is *in rem* so far as it affects property within Pennsylvania, but *in personam* as regards property outside of the state. Therefore, says defendant, because the United States was not a party, the probate proceedings are not binding upon it. The cases cited by defendant do not support its position for a couple of reasons. First, it appears that the parties in *Riley v. New York Trust Co.,* 315 U.S. 343, 62 S.Ct. 608, 86 L.Ed. 885 (1942) and *Commissioner v. Estate of Bosch,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967) did not have an opportunity to join in or appeal the probate judgment. Second, and more importantly, the judgment of the Register here does not effect out of state property by operation of the will. Rather any monies in Mr. Redmond's account transfer to the estate only by operation of a federal statute designed to rely upon a state determination of the proper legal representative.

■ An *ex parte* probation of a will, without individual notice to a particular interested party, will not be valid as to property located in another state or as to a determination of domicile of the decedent for purposes of property located in another state. *Riley,* 315 U.S. at 343, 62 S.Ct. at 610. But, it is valid as to a serviceman's pay held by the United States when the United States had individual notice of the proceeding and the statutory language indicates that state law shall determine the legal representative.

If the United States wished to challenge the issuance of letters testamentary, it should have done so in the state courts, rather than in this court. The important fact here is that notice of the claim was timely provided to the United States. If such notice were lacking or the United States had no standing to appeal then the essentially *ex parte* proceeding would raise another issue.

■ The court does not agree with the Comptroller General's position that payment pursuant to section 2771(a)(5) is authorized only to a legal representative appointed in accordance with the laws of the state where the decedent was domiciled. *See,* 33 Comp.Gen. 346 (1954); 52 Comp. Gen. 113 (1972). Nothing in the legislative history or in the statute indicates that Congress intended such a limited reading. In fact, the language of the statute itself tends to contradict the Comptroller General's position. If Congress intended payment to be made only to the legal representative appointed pursuant to the laws of the decedent's domicile it would have said so. Furthermore, and more convincing is the limitation found in section 2771(d) guarding against multiple payments: "A payment under this section bars recovery by any other person of the amount paid." This section recognizes that in certain situations there may be more than one person seeking the monies. If the Comptroller General's interpretation were correct there would be little need for such a provision as there can be only one domicile and presumably only one legal representative. This provision also protects the United States interests and limits its liability to only the amount due and no more. Subsequent claimants are left to any state law remedies available against the payee. "Legal representative" then means any person qualifying under the laws of a state where decedent's will has been properly probated whether it be a state where the decedent was domiciled or where his property is located. The result reached here should not unduly burden the government. It merely imposes upon the government the duty to timely investigate these claims to determine validity and to litigate, if necessary, sooner rather than later. Concerns of judicial comity and efficiency favor liti-

gation of issues such as these presented here at the earliest possible stage. To allow the government to attack decedent's will at this time is neither fair nor efficient.

## CONCLUSION

Because due process has been met by the presence of an opportunity to litigate, even though not taken advantage of, the court is inclined to grant the plaintiff's motion for summary judgment. However, the issue of whether decedent owned property in Fayette County, Pennsylvania at the time of his death must first be resolved. This is so because it is unclear whether Pennsylvania would give preclusive effect to an unappealed decision of the Register in the absence of decedent owning property in Fayette County at the time of his death. Therefore, plaintiff is directed to file with the court no later than 60 days from the filing of this opinion, sufficient evidence indicating that decedent was the owner of the residence at 41 Grant Street, Uniontown, Pennsylvania at the time of his death. Mere reliance upon the terms of the joint will will not be adequate. Defendant shall have 30 days to respond to plaintiff's submission. Should the parties have difficulty showing the ownership or non-ownership of the property in this manner a short evidentiary trial proceeding will be scheduled to examine the issue of ownership of the 41 Grant Street property. Should such a proceeding be required, the plaintiff shall file within 60 days of the filing of this opinion a status report indicating the need for such an evidentiary hearing. The court will then schedule a status conference at which the parties will determine the future course of this litigation.

